James E. Klinkert
State Bar No. 115937
Paul J. Gutierrez
State Bar No. 177606
Kelly Neavel
State Bar No. 244107
KLINKERT, GUTIERREZ & NEAVEL
1407 N. Batavia Street, Suite 202
Orange, CA 92867
(909) 390-9999
jklinkert@rkmattorneys.com
pgutierrez@rkmattorneys.com
kneavel@rkmattorneys.com

Attorney for Plaintiffs Joshua Blumenthal
and Monica Blumenthal

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Edward Young and Lisette Young,<br><br>Debtors.<br>_____<br>JOSHUA BLUMENTHAL and MONICA BLUMENTHAL,<br><br>Plaintiffs,<br><br>v.<br><br>EDWARD YOUNG, an individual; LISETTE YOUNG, fka Lisette Lanuza, an individual<br><br>Defendants.<br>_____ | Case No.: 6:20-bk-16824-SY<br><br>ADVERSARY NO: 6:21-ap-01010-SY<br><br>Chapter 7<br><br>PLAINTIFFS' EXHIBITS FOR CASE IN CHIEF<br><br>Date:   March 15, 2023<br>Time:   9:30 a.m.<br>Place:  Ctrm. 302<br>3420 Twelfth Street<br>Riverside, CA 92501 |

The attached exhibits are intended to be offered in Plaintiffs' case in chief. Plaintiffs reserve the right to use other exhibits for impeachment and rebuttal.

Dated: February 6, 2023                    KLINKERT, GUTIERREZ & NEAVEL

                                        /s/ Paul J. Gutierrez
                            By:_____
                                Paul J. Gutierrez
                                Attorneys for Plaintiffs
                                Joshua Blumenthal and Monica Blumenthal

| EX. NO. | DESCRIPTION | OFFERED BY | STIPULATED | OBJECTION | DATE IDENTIFIED | DATE ADMITTED |
|---|---|---|---|---|---|---|
| | | | | | | |
| 1 | Superior Court Complaint | Plaintiffs | | | | |
| 2 | Certified License Histories from Contractors State License Board | Plaintiffs | | | | |
| 3 | Complaint Objecting to Discharge | Plaintiffs | | | | |
| 4 | Email from Young re Construction Proposal | Plaintiffs | | | | |
| 5 | Letter of Agreement | Plaintiffs | | | | |
| 6 | Credit Card Authorization email | Plaintiffs | | | | |
| 7 | Blumenthal checks | Plaintiffs | | | | |
| 8 | All Pro - Electrical Walk Thru Report | Plaintiffs | | | | |
| 9 | All Pro - HVAC Report | Plaintiffs | | | | |
| 10 | Text Messages Between Young and Blumenthal | Plaintiffs | | | | |
| 11 | Emails Between Young and Blumenthal | Plaintiffs | | | | |
| 12 | Letter 11/6/19 Blumenthal to Young | Plaintiffs | | | | |
| 13 | Email and Attachments Blumenthal to Young | Plaintiffs | | | | |
| 14 | Email 11/8/19 Blumenthal to Young | Plaintiffs | | | | |

| EX. NO. | DESCRIPTION | OFFERED BY | STIPULATED | OBJECTION | DATE IDENTIFIED | DATE ADMITTED |
|---------|-------------|------------|------------|-----------|-----------------|---------------|
| 15 | Project Photos | Plaintiffs | | | | |
| 16 | Interior Design Services Billing | Plaintiffs | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| EX. NO. | DESCRIPTION | OFFERED BY | STIPULATED | OBJECTION | DATE IDENTIFIED | DATE ADMITTED |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

James E. Klinkert
State Bar No. 115937
Paul J. Gutierrez
State Bar No. 177606
Kelly A. Neavel
State Bar No. 244107
KLINKERT, GUTIERREZ & NEAVEL
1601 E. Orangewood, Suite 150
Anaheim, CA 92805
(909) 390-9999

Attorneys for Plaintiffs
Joshua Blumenthal and Monica Blumenthal

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

AUG 19 2020

BY _____
ANTHONY MARTINEZ, DEPUTY

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN BERNARDINO

| | |
|---|---|
| JOSHUA BLUMENTHAL and MONICA BLUMENTHAL,<br><br>     Plaintiffs,<br><br>     vs.<br><br>EDWARD YOUNG, an individual doing business as YOUNG & ASSOCIATES CONSTRUCTION and YOUNG & ASSOCIATES CONSTRUCTION SERVICES; LISETTE YOUNG, an individual doing business as YOUNG & ASSOCIATES CONSTRUCTION and YOUNG & ASSOCIATES CONSTRUCTION SERVICES and LISETTE YOUNG INTERIOR DESIGN; and DOES 1 through 500, inclusive,<br><br>     Defendants. | CASE NO. CIV DS 2 0 1 6 6 7 3<br><br>COMPLAINT FOR:<br><br>1. Breach of Contract<br>2. Fraudulent Inducement to Contract<br>3. Intentional Misrepresentation<br>4. Negligence<br>5. Violation of Contractor License Law<br>6. Violation of Unfair Practices Act<br>7. Rescission and Restitution<br>8. Monies Had and Received<br>9. Declaratory Relief<br>10. Conversion<br>11. Accounting<br>12. Imposition of Constructive Trust |

Plaintiffs allege:

### GENERAL ALLEGATIONS

1. Plaintiffs Joshua Blumenthal and Monica Blumenthal are, and at all times mentioned herein were, individuals residing in the County of San Bernardino, State of California.

2. Plaintiffs are informed and believe and thereon alleges that Defendant Edward Young ("Edward") is, and at all times mentioned herein was, an individual doing business as Young &

//

Associates Construction and Young & Associates Construction Services in the County of San Bernardino, State of California.

3. Plaintiffs are informed and believe and thereon alleges that Defendant Lisette Young ("Lisette") is, and at all times mentioned herein was, an individual doing business as Young & Associates Construction, Young & Associates Construction Services, and Lisette Young Interior Design in the County of San Bernardino, State of California.

4. Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1 through 500, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and Plaintiffs' injuries and damages as herein alleged were proximately caused by their acts. In particular, and without limitation, Plaintiffs are informed and believe and thereon allege that Defendants named herein as DOES 101 through 299 were subcontractors, laborers, or materialmen hired by Defendants who performed work on Plaintiffs' residence located at 14201 Ross Court, Rancho Cucamonga, California ("Blumenthal Property").

5. Plaintiffs are informed and believe and thereon allege that at all times herein mentioned each of the Defendants was the agent, employee and co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency, employment and conspiracy.

6. In or around June, 2019, Plaintiffs were induced to enter into a contract with Defendants for the design, construction and renovation of the Blumenthal Property including without limitation flooring, drywall, interior and exterior paint, electrical, HVAC, doors, windows, cabinets, plumbing, remodeling of bathrooms, remodeling of kitchen, concrete, patio, block wall, built in barbecue and entertainment area, garage door replacement, and landscape and design ("Contract"). The Contract was oral but is evidenced by invoices and other writings. At the time, Defendants represented to Plaintiffs that Defendants Edward, Young & Associates Construction and Young & Associates Construction Services were properly licensed general building contractors in the State of California

2

1  with substantial experience in the design and construction of real property improvements similar to

2  those required by the Contract ("Representations").

3       7.  Defendants failed to properly complete the work required by the Contract.  The work

4  under the Contract was defective and inadequate in numerous ways, including the failure to obtain

5  necessary building permits, the failure of the work to conform to industry standards of workmanship,

6  the failure to provide information requested by Plaintiffs as to the identity and qualifications of

7  persons performing work at the Blumenthal Property, and the failure to provide lien releases and

8  other work related documentation to Plaintiffs.   As of January, 2020, Plaintiffs had paid, directly

9  and indirectly, more than $397,000 to Defendants for the defective work.  Plaintiffs are informed and

10  believe and thereon allege that the amounts paid to Defendants, plus the cost of remediating the

11  defective work, plus the lost use and enjoyment of the Property, will exceed $1,000,000.

12  **FIRST CAUSE OF ACTION**

13  (Breach of Contract Against Defendants Edward,

14  Lisette and DOES 1 through 100, Inclusive)

15       8.  Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through

16  7, inclusive, of the Complaint and by this reference make them a part hereof.

17       9.  Plaintiffs have done all things required of them under the Contract except to the extent

18  that Defendants by their actions and omissions prevented Plaintiffs' performance.

19       10.  Defendants have breached the Contract by virtue of the construction defects and other

20  circumstances alleged above.

21       11.  As a result of the Defendants' breach of the Contract, Plaintiffs have sustained economic

22  damages in an amount not less than $1,000,000 according to proof at the time of trial.

23  **SECOND CAUSE OF ACTION**

24  (Fraudulent Inducement to Contract Against Defendants Edward,

25  Lisette and DOES 1 through 100, Inclusive)

26       12.  Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1

27  through 11, inclusive, of the Complaint and by this reference make them a part hereof.

28  //

3

13. In or around June, 2019, Defendants induced Plaintiffs to enter into the Contract by the Representations alleged above that Defendants were experienced, well qualified and properly licensed general building contractors.

14. The Representations were false and Defendants knew them to be false at the time they were made. The true facts were that Defendants were not and had never been properly licensed general building contractors, and Defendants were not experienced or well qualified to perform the Contract work.

15. At the time Defendants made the Representations alleged herein, Plaintiffs were not aware of the falsity of the Representations and believed the Representations to be true. Plaintiffs' reliance on the Defendants' promises and guarantees was reasonable because Defendants represented themselves to be trustworthy licensed contractors.

16. As a result of the false Representations made by Defendants, Plaintiffs were induced to and did enter into the Contract and pay Defendants substantial sums of money in furtherance of the Contract. Had Plaintiffs known the true facts, they would not have taken such actions.

17. As a result of the Defendants' fraud, Plaintiffs have sustained economic damages in an amount not less than $1,000,000 according to proof at the time of trial.

18. As a further result of the Defendants' fraud, Plaintiffs were hurt and injured in their health, strength and activity, sustaining injury to their bodies and shock and injury to their nervous systems and persons, all of which have caused and continue to cause Plaintiffs great mental and physical pain and suffering and nervousness. Plaintiffs are informed and believe and thereon allege that the injuries will result in some permanent disability, all to their general damage in an amount according to proof at the time of trial.

19. The fraudulent conduct of Defendants was willful, wanton, malicious, and oppressive in nature, and undertaken by Defendants to satisfy the Defendants' greed and without regard or concern for the damages and injuries certain to be sustained by the Plaintiffs. As a result, Plaintiffs are entitled to an award of punitive and exemplary damages.

//

//

4

## THIRD CAUSE OF ACTION

(Intentional Misrepresentation Against Defendants Edward,

Lisette and DOES 1 through 100, Inclusive)

20. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 19, inclusive, of the Complaint and by this reference make them a part hereof.

21. In and around June, 2019, Defendants made the Representations to Plaintiffs.

22. The Representations were false at the time the Defendants made it, and Defendants knew them to be false. The true facts were that Defendants were not properly licensed contractors and Defendants did not have the experience and qualifications needed to properly perform the Contract work.

23. At the time Defendants made the false Representations, Plaintiffs were not aware of the falsity of the Defendants' Representations or the true facts. Plaintiffs' reliance on the Defendants' Representations was reasonable because Defendants represented themselves to be trustworthy licensed contractors.

24. As a result of the fraudulent Representations of Defendants, Plaintiffs were induced to and did enter into the Contract and pay Defendants substantial sums of money pursuant to the Contract. Had Plaintiffs known that the Defendants' Representations were false, Plaintiffs would not have taken such actions.

25. As a result of the Defendants' fraud, Plaintiffs have sustained economic damages of a nature and in an amount not less than $1,000,000 according to proof at the time of trial.

26. As a further result of the Defendants' fraud, Plaintiffs were hurt and injured in their health, strength and activity, sustaining injury to their bodies and shock and injury to their nervous systems and persons, all of which have caused and continue to cause Plaintiffs great mental and physical pain and suffering and nervousness. Plaintiffs are informed and believe and thereon allege that the injuries will result in some permanent disability, all to their general damage in an amount according to proof at the time of trial.

27. The fraudulent conduct of Defendants was willful, wanton, malicious, and oppressive in nature, and undertaken by Defendants to satisfy the Defendants' greed and without regard or

1  concern for the damages and injuries certain to be sustained by the Plaintiffs.  As a result, Plaintiffs

2  are entitled to an award of punitive and exemplary damages.

3  <center>**FOURTH CAUSE OF ACTION**</center>

4  <center>(Negligence Against All Defendants)</center>

5  28. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through

6  27, inclusive, of the Complaint and by this reference make them a part hereof.

7  29. At all times mentioned herein, Defendants held themselves out to be and acted as general

8  building contractors.  As such, Defendants owed a duty of care to Plaintiffs to perform their work

9  in compliance with all applicable laws and industry standards of workmanship.

10  30.  Defendants breached the duty of care they owed to Plaintiffs by virtue of the facts and

11  circumstances alleged.

12  31.  As a result of the Defendants' negligence, Plaintiffs have sustained economic damages

13  in an amount not less than $1,000,000 according to proof at the time of trial.

14  32.  As a further result of the Defendants' negligence, Plaintiffs were hurt and injured in their

15  health, strength and activity, sustaining injury to their bodies and shock and injury to their nervous

16  systems and persons, all of which have caused and continue to cause Plaintiffs great mental and

17  physical pain and suffering and nervousness.  Plaintiffs are informed and believe and thereon allege

18  that the injuries will result in some permanent disability, all to their general damage in an amount

19  according to proof at the time of trial.

20  <center>**FIFTH CAUSE OF ACTION**</center>

21  <center>(Violation of Contractors' State License Law Against Defendants,</center>

22  <center>Edward, Lisette and DOES 1 through 100, Inclusive)</center>

23  33. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through

24  32, inclusive, of the Complaint and by this reference make them a part hereof.

25  34. At all times mentioned herein, Business & Professions Code §7000 *et seq.* ("Contractors'

26  State License Law") was and is a series of statutes one of the purposes of which is to protect

27  consumers and provide a private right of action to consumers injured by violations of the

28  //

<center>6</center>

1  Contractors' State License Law. At all times herein mentioned, Plaintiffs were among the class of

2  persons intended to be protected by the Contractors' State License Law.

3      35.  Defendants violated various provisions of the Contractors' State License Law and in

4  particular, without limitation, those provisions of the Contractors' State License Law requiring a

5  contractors license and governing the home improvement business (Business &Professions Code

6  §7068 and §7150-7168, respectively), by virtue of the false Representations and other conduct

7  alleged as well as by failing to include in the Contract various provisions required by law to be

8  included in a home improvement contract, the failure to complete the work in a timely manner in

9  accord with industry standards, and the performance of work in such a way as to cause damage to

10  the Property (together, the "Violations").

11      36.  As a result of the Violations, Plaintiffs have sustained economic damages in an amount

12  not less than $1,000,000 according to proof at the time of trial.

13      37.  As a further result of the Violations, Plaintiffs are entitled to an order requiring

14  Defendants and each of them to disgorge all monies paid and return such monies to Plaintiffs.

15  <center>**SIXTH CAUSE OF ACTION**</center>

16  <center>(Violation of Unfair Practices Act Against Defendants</center>

17  <center>Edward, Lisette and DOES 1 through 100, Inclusive)</center>

18      38. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through

19  37, inclusive, of the Complaint and by this reference make them a part hereof.

20      39.  Plaintiffs are informed and believe and thereon allege that the Violations of the

21  Contractors' State License Law described above are part of Defendants' routine manner of

22  conducting business. As such, the Violations and Defendants' manner of conducting business also

23  constitute violations of the Unfair Practices Act (Business & Professions Code §17000 *et seq.*)

24      40. Plaintiffs have paid money to Defendants as a result of the unfair business practices and

25  have suffered actual loss as a result of the Defendants' unfair business practices alleged herein.

26  Plaintiffs are entitled to disgorgement and return of all monies they paid to Defendants. Plaintiffs

27  are further entitled to a temporary order, preliminary injunction and permanent injunction preventing

28  Defendants from continuing their ongoing violation of the Unfair Practices Act.

<center>7</center>

**SEVENTH CAUSE OF ACTION**

(Rescission and Restitution Against Defendants

Edward, Lisette and DOES 1 through 100, Inclusive)

41. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 40, inclusive, of the Complaint and by this reference make them a part hereof.

42. By virtue of the illegality of the Contract, the lack of proper licensing and the other facts and circumstances described above, Plaintiffs are entitled to judgment rescinding the Contract and providing for the restitution of monies paid by Plaintiffs to Defendants.

**EIGHTH CAUSE OF ACTION**

(Declaratory Relief Against Defendants

Edward, Lisette and DOES 1 through 100, Inclusive)

43. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 42, inclusive, of the Complaint and by this reference make them a part hereof.

44. An actual controversy has arisen and now exists between the parties with respect to the enforce ability of the Contract. Plaintiffs contend that the Contract is illegal and therefore unenforceable by virtue of the Violations of the Contractors' State License Law described above. Defendants apparently contend the Contract is enforceable notwithstanding the Violations of the Contractors' State License law described above.

45. Plaintiffs are therefore entitled to and seek a judicial declaration from this Court determining that the Contract is unenforceable.

**NINTH CAUSE OF ACTION**

(Monies Had and Received Against Defendants

Edward, Lisette and DOES 1 through 100, Inclusive)

46. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 44, inclusive, of the Complaint and by this reference make them a part hereof.

47. Within the last two years at Rancho Cucamonga, California, Plaintiffs paid to or for benefit of Defendants not less than $397,000 at the special instance and request of Defendants.

//

48. Neither all nor any portion of the money paid by Plaintiffs to Defendants has been returned to Plaintiffs despite demand therefor.

49. Plaintiffs are therefore entitled to and request judgment in an amount of $397,000 according to proof at the time of trial for monies had and received by Defendants.

### TENTH CAUSE OF ACTION

(Conversion Against Defendants Edward,

Lisette and DOES 1 through 100, Inclusive)

50. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 49, inclusive, of the Complaint and by this reference make them a part hereof.

51. In or around June, 2019, Plaintiffs were the owners of and had in their possession certain property including furniture, closet organizers, appliances, and goods and materials intended for use in the renovation of the Blumenthal Property and located at the Blumenthal Property. Such property had a value to Plaintiffs of not less than $50,000 according to proof at the time of trial.

52. In or around June, 2019, Defendants either took such property or refused to return such property when requested by Plaintiffs to do so, thus converting such property to their own use and benefit contrary to the ownership and rights of Plaintiffs.

53. As a result of the Defendants' conversion, Plaintiffs have sustained economic damages in an amount not less than $50,000 according to proof at the time of trial.

54. As a further result of the Defendants' conversion, Plaintiffs were hurt and injured in their health, strength and activity, sustaining injury to their bodies and shock and injury to their nervous systems and persons, all of which have caused and continue to cause Plaintiffs great mental and physical pain and suffering and nervousness. Plaintiffs are informed and believe and thereon allege that the injuries will result in some permanent disability, all to their general damage in an amount according to proof at the time of trial.

55. The conduct of Defendants constituting conversion was willful, wanton, malicious, and oppressive in nature, and undertaken by Defendants to satisfy the Defendants' greed and without regard or concern for the damages and injuries certain to be sustained by the Plaintiffs. As a result, Plaintiffs are entitled to an award of punitive and exemplary damages.

**ELEVENTH CAUSE OF ACTION**

(Accounting Against Defendants Edward,

Lisette and DOES 1 through 100, Inclusive)

56. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 55, inclusive, of the Complaint and by this reference make them a part hereof.

57. Plaintiffs are entitled to an accounting of all monies received and spent by Defendants in connection with the renovation of the Blumenthal Property pursuant to the illegal contract, as well as the details of such expenditures including the names and contact information for all payees and all individuals who performed any work or provided any equipment or materials to the Blumenthal Property in connection with its renovation. Plaintiffs have requested such an accounting from Defendants but Defendants have failed and refused and continue to fail and refuse to provide such an accounting.

58. Plaintiffs are therefore entitled to a full and accurate accounting from Defendants of all monies received and spent by Defendants in connection with the renovation of the Blumenthal Property pursuant to the illegal contract, as well as the details of such expenditures including the names and contact information for all payees and all individuals who performed any work or provided any equipment or materials to the Blumenthal Property in connection with its renovation.

**TWELFTH CAUSE OF ACTION**

(Constructive Trust Against Defendants Edward,

Lisette and DOES 1 through 100, Inclusive)

59. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 58, inclusive, of the Complaint and by this reference make them a part hereof.

60. Plaintiffs are informed and believe and thereon allege that Plaintiffs are entitled to judgment imposing a constructive trust on any real or personal property acquired by the Defendants in full or in part with monies found to be owing to Plaintiffs following the accounting prayed for by Plaintiffs, declaring that the Defendants hold any such acquired real or personal property as constructive trustees for the benefit of Plaintiffs, imposing a lien in favor of Plaintiffs on any such

//

10

acquired real or personal property, and requiring Defendants to deliver any such acquired real or personal property to Plaintiffs.

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

**AS TO THE FIRST CAUSE OF ACTION**

1. For economic damages in an amount not less than $1,000,000 according to proof at the time of trial.

**AS TO THE SECOND CAUSE OF ACTION**

1. For economic damages in an amount not less than $1,000,000 according to proof at the time of trial.

2. For general, non-economic damages in an amount not less than $250,000 according to proof at the time of trial.

3. For an award of exemplary and punitive damages in an amount according to proof at the time of trial.

**AS TO THE THIRD CAUSE OF ACTION**

1. For economic damages in an amount not less than $1,000,000 according to proof at the time of trial.

2. For general, non-economic damages in an amount not less than $250,000 according to proof at the time of trial.

3. For an award of exemplary and punitive damages in an amount according to proof at the time of trial.

**AS TO THE FOURTH CAUSE OF ACTION**

1. For economic damages in an amount not less than $1,000,000 according to proof at the time of trial.

2. For general, non-economic damages in an amount not less than $250,000 according to proof at the time of trial.

**AS TO THE FIFTH CAUSE OF ACTION**

1. For economic damages in an amount not less than $1,000,000 according to proof at the time of trial.

1 | 2. For judgment requiring that Defendants and each of them disgorge all monies paid and

2 | return such monies to Plaintiffs.

3 | **AS TO THE SIXTH CAUSE OF ACTION**

4 | 1. For judgment requiring that Defendants and each of them disgorge all monies paid to them

5 | and to return such monies to Plaintiffs.

6 | 2. For a temporary order, preliminary injunction and permanent injunction preventing

7 | Defendants from continuing their ongoing illegal conduct and violation of the Unfair Practices Act.

8 | **AS TO THE SEVENTH CAUSE OF ACTION**

9 | 1. For judgment rescinding the Contract and providing for the return of all consideration

10 | given by Plaintiffs to Defendants pursuant to the Contract, less the value if any of the work

11 | performed by Defendants.

12 | **AS TO THE EIGHTH CAUSE OF ACTION**

13 | 1. For a judicial declaration from this Court determining that the Contract is unenforceable.

14 | **AS TO THE NINTH CAUSE OF ACTION**

15 | 1. For judgment in an amount not less than $397,000 according to proof at the time of trial

16 | for monies had and received by Defendants.

17 | **AS TO THE TENTH CAUSE OF ACTION**

18 | 1. For economic damages in an amount not less than $50,000 according to proof at the time

19 | of trial.

20 | 2. For general, non-economic damages in an amount not less than $250,000 according to

21 | proof at the time of trial.

22 | 3. For an award of exemplary and punitive damages in an amount according to proof at the

23 | time of trial.

24 | **AS TO THE ELEVENTH CAUSE OF ACTION**

25 | 1. For a full and accurate accounting from Defendants of all monies received and spent by

26 | Defendants in connection with the renovation of the Blumenthal Property pursuant to the illegal

27 | contract, as well as the details of such expenditures including the names and contact information for

28 | //

12

1  all payees and all individuals who performed any work or provided any equipment or materials to

2  the Blumenthal Property in connection with its renovation.

3  **AS TO THE TWELFTH CAUSE OF ACTION**

4      1. For judgment imposing a constructive trust on any real or personal property acquired by

5  the Defendants in full or in part with monies found to be owing to Plaintiffs following the accounting

6  prayed for by Plaintiffs, declaring that the Defendants hold any such acquired real or personal

7  property as constructive trustees for the benefit of Plaintiffs, imposing a lien in favor of Plaintiffs

8  on any such acquired real or personal property, and requiring Defendants to deliver any such

9  acquired real or personal property to Plaintiffs.

10  **AS TO ALL CAUSES OF ACTION**

11      1. For costs of suit.

12      2. For such other and further relief as the Court may deem proper.

13      3. For pre-judgment interest according to proof at trial.

14

15  Dated: August 14, 2020            KLINKERT, GUTIERREZ & NEAVEL

16                          By:_____
                              James E. Klinkert
17                          Paul J. Gutierrez
                              Kelly A. Neavel
18                          Attorneys for Plaintiffs
                              Joshua Blumenthal and Monica Blumenthal
19

20

21

22

23

24

25

26

27

28

**CSLB**

**CONTRACTORS STATE LICENSE BOARD**

9821 Business Park Drive, Sacramento, California 95827
Mailing Address: P.O. Box 26000, Sacramento, CA 95826
800-321-CSLB (2752) | www.cslb.ca.gov | CheckTheLicenseFirst.com

STATE OF CALIFORNIA
Governor Gavin Newsom

# CERTIFICATION OF RECORDS

I HEREBY CERTIFY under penalty of perjury under the laws of the State of California that I am duly authorized by the Registrar of Contractors, the official custodian of records of the Contractors State License Board, to certify to the contents of said records pursuant to Section 162 of the Business and Professions Code, and Section 1280 and 1284 of the Evidence Code.  The following contractor was licensed under the provisions of law administered by said Board as outlined below:

**Young & Associates Construction Services Inc**
**7344 Goldboro Lane**
**Riverside, California 92506**

License Number:  **1071533**
License Type:  **Corporation**
Issued:  **12/02/2020**

**Classifications:**
B General Building Contractor

**Effective:**
Issuance

**Personnel:**
Edward James Young, RMO

**Effective:**
Issuance

**History**

12/02/2020 Issued
11/24/2021 Suspended 996.340 (Contractor's Bond)
05/11/2022 Suspension Still In Effect

**Additional Information**
Section references are: Business and Professions Code, Code of Civil Procedure and Family Code.

This license has an "Exemption from Workers' Compensation Insurance" effective 10/22/2020, on file.

Contractor's Bond #100524208 written by American Contractors Indemnity Company in the amount of $15,000 was in effective 10/23/2020; cancelled & suspended 11/24/2021.

We have no record of a current Contractor's Bond or Cash Deposit on file.

License number 1071533 was issued on 12/02/2020.  It did not exist prior to the time period requested.

This license is renewed to 12/31/2022.

//
//
//

WITNESS MY HAND and seal of said Board, this 11th day of May 2022, at Sacramento, California.

KATRINA GALBRAITH
CUSTODIAN OF RECORDS

DM/13L-3 (Rev. 1-17)



**CSLB CONTRACTORS STATE LICENSE BOARD**
9821 Business Park Drive, Sacramento, California 95827
Mailing Address: P.O. Box 26000, Sacramento, CA 95826
800.321.CSLB (2752) | www.cslb.ca.gov | CheckTheLicenseFirst.com

21 060 / 24 9

STATE OF CALIFORNIA
Governor Gavin Newsom

MAY - 9 2022

OFFICE USE ONLY

VC

# Request for Certified License History

**FEE: $67.** The fee must accompany your request. Attach a money order, personal or business check, or cashier's check made payable to: Registrar of Contractors. The estimated processing time is 6-8 weeks. For expedited requests, you must include a copy of your current court documents to verify the court date.

## Definition

A Verified Certificate is a certified license history covering a specific time period that is mainly for court actions involving contractors. The Verified Certificate contains the contractor's business information and the standing of the license at all times during the period covered by the certificate.

## A Certified License History:

- Is admissible in court as a *prima facie* evidence of the facts stated on the certificate.
- Includes the business name and address, classifications held, personnel, license status, bond information (upon request), and any legal action taken against the license.
- Covers the current year and up to the last three (3) years of history, unless otherwise requested.

## To request a Certified License History, complete the following:

| BUSINESS NAME | LICENSE NUMBER |
|---|---|
| Young & Associates Construction Services | 12|22  1071533 |

TIME PERIOD REQUESTED
From    May 1 2019    to Present

I WOULD LIKE INFORMATION ON:

| Bonds | Liability Insurance (LLC's only) | Workers' Compensation Insurance |
|---|---|---|
| ● Yes  ○ No | ● Yes  ○ No | ● Yes  ○ No |

### REQUESTER INFORMATION

| NAME (first, middle, last) | DAYTIME PHONE (include area code) |
|---|---|
| Kelly A. Neavel | 909-390-9999 |

BUSINESS NAME
Klinkert, Gutierrez & Neavel

BUSINESS MAILING ADDRESS (include city, state, and zip code)
1407 N. Batavia St., Ste 202, Orange, CA 92867

| REQUESTER SIGNATURE | DATE |
|---|---|
| *[signature]* | 04/29/22 |



RECEIVED
MAY 0 6 2022
CSLB MAILROOM

13L-2b (Rev 02.27.13) page 1 of 2

**CSLB**

**CONTRACTORS STATE LICENSE BOARD**                         STATE OF CALIFORNIA
9821 Business Park Drive, Sacramento, CA 95827               Governor Gavin Newsom
Mailing Address: P.O. Box 26000, Sacramento, CA 95826
800.321.CSLB (2752)  |  *www.cslb.ca.gov*  |  *CheckTheLicenseFirst.com*

# CERTIFICATION OF RECORDS

I HEREBY CERTIFY under penalty of perjury under the laws of the State of California that I am duly authorized by the Registrar of Contractors, the official custodian of records of the Contractors State License Board, to certify to the contents of said records pursuant to Section 162 of the Business and Professions Code, and Section 1280 and 1284 of the Evidence Code;

On May 11, 2022, a diligent search of the records for the Contractors State License Board was made, and **no record** was found to indicate:

### LISETTE YOUNG

was licensed as a California contractor under the provisions of the law administered by said Board during the period:

### JANUARY 01, 2019 TO MAY 11, 2022

WITNESS MY HAND and seal of said Board, this 11th day of May 2022, at Sacramento, California.

KATRINA GALBRAITH
CUSTODIAN OF RECORDS

DM
13H-5



**CONTRACTORS STATE LICENSE BOARD**

STATE OF CALIFORNIA

9821 Business Park Drive, Sacramento, CA 95827

Governor Gavin Newsom

Mailing Address: P.O. Box 26000, Sacramento, CA 95826

800.321.CSLB (2752)  |  *www.cslb.ca.gov*  |  *CheckTheLicenseFirst.com*

May 11, 2022

Kelly A. Neavel
Klinkert, Gutierrez & Neavel
1407 N. Batavia Street, Ste. 202
Orange, CA 92867

Dear Ms. Neavel,

In accordance with your request received May 9, 2022, we have provided the following:

Verified Certificate of non-licensed status for:

## <u>LISETTE YOUNG</u>

If you have any questions or need further assistance, please contact me at the address above or via telephone at (916) 255-2509.

Sincerely,

*Danielle Miller*

Management Services technician
Record Certification Unit



**CONTRACTORS STATE LICENSE BOARD**
9821 Business Park Drive, Sacramento, California 95827
Mailing Address: P.O. Box 26000, Sacramento, CA 95826
800.321.CSLB (2752) | *www.cslb.ca.gov* | *CheckTheLicenseFirst.com*

21   060   251
MAY - 9 2022

STATE OF CALIFORNIA
Governor Gavin Newsom



## Request for Certificate of Non-License

**FEE: $67.** The fee must accompany your request. Attach a money order, personal or business check, or cashier's check made payable to: Registrar of Contractors. The estimated processing time is 6-8 weeks. For expedited requests, you must include a copy of your current court documents to verify the court date.

OFFICE USE ONLY

NR

### Definition

Upon request, CSLB prepares statements about the absence of a license during a given time period, or a "no record verified certificate." To identify the non-licensed subject, you will need to provide the person's full name, business name (if applicable), and address.

### A Certificate of Non-License:

- Is admissible in court as a *prima facie* evidence of the facts stated on the certificate.

- States that a contractor's license could not be substantiated with the information contained in the Certificate of Non-License.

- Covers the current year and up to the last three (3) years of history (unless otherwise requested up to a maximum of 10 years).

### To request a Certified Non-License History, complete the following:

INDIVIDUAL'S NAME *(first, middle, last)*
**Lisette Young**

BUSINESS NAME

BUSINESS MAILING ADDRESS *(include city, state, and zip code)*

TIME PERIOD REQUESTED
From **2019**   to Present

#### REQUESTER INFORMATION

| NAME *(first, middle, last)* | DAYTIME PHONE *(include area code)* |
|---|---|
| **Kelly A. Neavel** | **909-390-9999** |

BUSINESS NAME
**Klinkert, Gutierrez & Neavel**

BUSINESS MAILING ADDRESS *(include city, state, and zip code)*
**1407 N. Batavia St., Ste 202, Orange, CA 92867**

| REQUESTER SIGNATURE | DATE |
|---|---|
| *Kelly A Neavel* | **05/09/22** |

13L2-c (Rev 04.30.12)

**CONTRACTORS STATE LICENSE BOARD**

9821 Business Park Drive, Sacramento, CA 95827
Mailing Address: P.O. Box 26000, Sacramento, CA 95826
800.321.CSLB (2752)  |  *www.cslb.ca.gov*  |  *CheckTheLicenseFirst.com*

STATE OF CALIFORNIA

Governor Gavin Newsom

# CERTIFICATION OF RECORDS

I HEREBY CERTIFY under penalty of perjury under the laws of the State of California that I am duly authorized by the Registrar of Contractors, the official custodian of records of the Contractors State License Board, to certify to the contents of said records pursuant to Section 162 of the Business and Professions Code, and Section 1280 and 1284 of the Evidence Code;

On May 11, 2022, a diligent search of the records for the Contractors State License Board was made, and **no record** was found to indicate:

## YOUNG & ASSOCIATES CONSTRUCTION

was licensed as a California contractor under the provisions of the law administered by said Board during the period:

## JANUARY 01, 2019 TO MAY 11, 2022

WITNESS MY HAND and seal of said Board, this 11th day of May 2022, at Sacramento, California.

KATRINA GALBRAITH
CUSTODIAN OF RECORDS

DM
13H-5



**CONTRACTORS STATE LICENSE BOARD**

STATE OF CALIFORNIA
Governor Gavin Newsom

9821 Business Park Drive, Sacramento, CA 95827
Mailing Address: P.O. Box 26000, Sacramento, CA 95826
800.321.CSLB (2752)  |  *www.cslb.ca.gov*  |  *CheckTheLicenseFirst.com*

May 11, 2022


Kelly A. Neavel
Klinkert, Gutierrez & Neavel
1407 N. Batavia Street, Ste. 202
Orange, CA 92867


Dear Ms. Neavel,

In accordance with your request received May 9, 2022, we have provided the following:

Verified Certificate of non-licensed status for:


## YOUNG & ASSOCIATES CONSTRUCTION


If you have any questions or need further assistance, please contact me at the address above or via telephone at (916) 255-2509.


Sincerely,

*Danielle Miller*

Management Services technician
Record Certification Unit



**CONTRACTORS STATE LICENSE BOARD**
9821 Business Park Drive, Sacramento, California 95827
Mailing Address: P.O. Box 26000, Sacramento, CA 95826
800.321.CSLB (2752)  |  *www.cslb.ca.gov*  |  *CheckTheLicenseFirst.com*

21  090 1252

STATE OF CALIFORNIA
Governor Gavin Newsom

OFFICE USE ONLY

NR

# Request for Certificate of Non-License

**FEE: $67.** The fee must accompany your request. Attach a money order, personal or business check, or cashier's check made payable to: Registrar of Contractors. The estimated processing time is 6-8 weeks. For expedited requests, you must include a copy of your current court documents to verify the court date.

**Definition**

Upon request, CSLB prepares statements about the absence of a license during a given time period, or a "no record verified certificate." To identify the non-licensed subject, you will need to provide the person's full name, business name (if applicable), and address.

**A Certificate of Non-License:**

- Is admissible in court as a *prima facie* evidence of the facts stated on the certificate.

- States that a contractor's license could not be substantiated with the information contained in the Certificate of Non-License.

- Covers the current year and up to the last three (3) years of history (unless otherwise requested up to a maximum of 10 years).

**To request a Certified Non-License History, complete the following:**

INDIVIDUAL'S NAME *(first, middle, last)*

BUSINESS NAME
Young & Associates Construction

BUSINESS MAILING ADDRESS *(include city, state, and zip code)*

TIME PERIOD REQUESTED
From 2019   to Present

| REQUESTER INFORMATION | |
|---|---|
| NAME *(first, middle, last)*<br>Kelly A. Neavel | DAYTIME PHONE *(include area code)*<br>909-390-9999 |
| BUSINESS NAME<br>Klinkert, Gutierrez & Neavel | |
| BUSINESS MAILING ADDRESS *(include city, state, and zip code)*<br>1407 N. Batavia St., Ste 202, Orange, CA 92867 | |
| REQUESTER SIGNATURE<br>*Kelly A Neavel* | DATE<br>05/09/22 |

13L2-c (Rev 04.30.12)

1  James E. Klinkert (SBN 115937)
   Paul J. Gutierrez (SBN 177606)
2  Kelly A. Neavel (SBN 244107)
3  KLINKERT, GUTIERREZ & NEAVEL
   1407 N. Batavia St., Suite 202
4  Orange, CA 92867
   Tel.: (909) 390-9999
5  jklinkert@rkmattorneys.com
6  kneavel@rkmattorneys.com

7  **ASSOCIATED COUNSEL**
   Glen J. Biondi, Esq. (SBN 207744)
8  BIONDI LAW FIRM
9  31610 Railroad Canyon Road, Ste. 2
   Canyon Lake, CA 92587
10 Tel: (951) 246-6145
11 glen@biondilawcorp.com

12
13 Attorney for Plaintiffs Joshua Blumenthal and Monica Blumenthal

14            UNITED STATES BANKRUPTCY COURT

15            CENTRAL DISTRICT OF CALIFORNIA

16

| | |
|---|---|
| In re Edward Young and Lisette Young, | Case No.: 6:20-bk-16824-SY |
| Debtors. | Chapter 7 |
| JOSHUA BLUMENTHAL and MONICA BLUMENTHAL, | ADV. NO.: |
| Plaintiffs, | COMPLAINT OBJECTING TO DISCHARGE AND TO DETERMINE DISCHARGEABILITY OF DEBT (11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6)) |
| v. | |
| EDWARD YOUNG, an individual; LISETTE YOUNG, fka Lisette Lanuza, an individual | |
| Defendants. | |

27        Plaintiffs JOSHUA BLUMENTHAL and MONICA BLUMENTHAL ("Blumenthal")

28 allege as follows:

1

Complaint Objecting to Discharge and to Determine Dischargability of Debt

<u>JURISDICTION</u>

1.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§1334 and 157 (b)(2)(I) and (J) and this Complaint is based on 11 U.S.C. §523.  This is an adversary core proceeding to determine the Debtors' right to discharge and the dischargeability of Debtors' obligation to Plaintiffs.

2.     On October 14, 2020, Defendants EDWARD YOUNG and LISETTE YOUNG, as the Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 6:20-bk-16824-SY in the United States Bankruptcy Court, Central District of California.

<u>VENUE</u>

3.     Plaintiffs are informed and believe and based thereon allege that:

       a.     Defendants entered into and engaged in acts, and performed and/or breached written agreements in San Bernardino County, California;

       b.     Certain loan obligations contain a choice of venue clause providing that if there is a lawsuit, defendant agreed upon plaintiff's request to submit to the jurisdiction to the Courts in Los Angeles County, California.

<u>PARTIES</u>

4.     Plaintiffs Joshua Blumenthal and Monica Blumenthal (collectively as "Plaintiffs") are, and at all times mentioned herein were, individuals residing in the County of San Bernardino, State of California.

5.     Defendant EDWARD YOUNG ("EDWARD" or collectively as "Defendants") is the debtor and at all times mentioned herein was an individual doing business as Young & Associates Construction and Young & Associates Construction Services in the County of San Bernardino, State of California.

6.     Defendant LISETTE YOUNG, fka, Lisette Lanuza ("LISETTE" or collectively as "Defendants") is the debtor and at all times mentioned herein was an individual doing business as Young & Associates Construction, Young & Associates Construction Services, and Lisette Young Interior Design in the County of San Bernardino, State of California.

2

Complaint Objecting to Discharge and to Determine Dischargability of Debt

<u>FIRST CLAIM FOR RELIEF</u>

(Pursuant to 11 U.S.C. §§ 523(a)(2)(A))

7.      In or around June, 2019, Plaintiffs were induced to enter into a contract with Defendants for the design, construction and renovation of the residence located at 14201 Ross Court, Rancho Cucamonga, California ("Blumenthal Property") including without limitation to flooring, drywall, interior and exterior paint, electrical, HVAC, doors, windows, cabinets, plumbing, remodeling of bathrooms, remodeling of kitchen, concrete, patio, block wall, built in barbecue and entertainment area, garage door replacement, and landscape and design ("Contract"). The Contract was oral but is evidenced by invoices and other writings. At the time, EDWARD and LISETTE represented to Plaintiffs that Defendants Edward, Young & Associates Construction and Young & Associates Construction Services were properly licensed general building contractors in the State of California with substantial experience in the design and construction of real property improvements similar to those required by the Contract ("Representations").

8.      Defendants failed to properly complete the work required by the Contract. The work under the Contract was defective and inadequate in numerous ways, including the failure to obtain necessary building permits, the failure of the work to conform to industry standards of workmanship, the failure to provide information requested by Plaintiffs as to the identity and qualifications of persons performing work at the Blumenthal Property, and the failure to provide lien releases and other work-related documentation to Plaintiffs. As of January, 2020, Plaintiffs had paid, directly and indirectly, more than $397,000 to Defendants for the defective work. Plaintiffs are informed and believe and thereon allege that the amounts paid to Defendants, plus the cost of remediating the defective work, plus the lost use and enjoyment of the Blumenthal Property, will exceed $1,000,000.

9.      In June 2020, EDWARD and LISETTE induced Plaintiffs to enter into the Contract by the Representations alleged above that Defendants were experienced, well qualified and properly licensed general building contractors.

10.     Plaintiffs decision to hire EDWARD and LISETTE and to pay monies to

3

Complaint Objecting to Discharge and to Determine Dischargability of Debt

1 | EDWARD and LISETTE was the direct result of the Representations made by Defendants.

2 |     11.    The Representations were false and Defendants knew them to be false at the time

3 | they were made.  The true facts were that EDWARD and LISETTE were not and had never

4 | been properly licensed general building contractors, and Defendants were not experienced or

5 | well qualified to perform the Contract work.

6 |     12.    Defendants concealed and suppressed the Representations described above.

7 |     13.    Defendants suppressed and concealed the facts described above to defraud

8 | Plaintiffs.  The suppressions and concealments of the facts were made with the intent to induce

9 | Plaintiffs to hire Defendants and to pay monies to Defendants.

10 |     14.    Plaintiffs trusted Defendants.  Plaintiffs were completely unaware of the true

11 | facts that Defendants concealed and suppressed.

12 |     15.    At the time Defendants made the Representations alleged herein, Plaintiffs were

13 | not aware of the falsity of the Representations and believed the Representations to be true.

14 | Plaintiffs' reliance on the Defendants' promises and guarantees was reasonable because

15 | Defendants represented themselves to be trustworthy licensed contractors.

16 |     16.    As a result of the false Representations made by Defendants, Plaintiffs were

17 | induced to and did enter into the Contract and pay Defendants substantial sums of money.  Had

18 | Plaintiffs known the true facts, they would not have taken such actions.

19 |     17.    As a proximate result of Defendants' fraudulent suppression and concealment of

20 | the true material facts, Plaintiffs have suffered general and special damages and are entitled to

21 | compensation in an amount to be proven at trial of at least $1,000,000. Plaintiffs allege that the

22 | conduct of Defendants as alleged herein prevents the court from discharging any obligation

23 | owed by them to Joshua and Monica Blumenthal pursuant to 11 U.S.C. §§ 523(a)(2)(B).

24 |     18.    Defendants engaged in conduct described above with oppression, malice or fraud,

25 | and with the intent to vex, injure, and annoy Plaintiffs and deprive them of their right to

26 | property.  Therefore, Plaintiffs are entitled to punitive damages in an amount to be proved at

27 | trial. The aforementioned conduct of EDWARD and LISETTE, to intentional misrepresent,

28 | deceive and conceal material facts known to Defendants, was done with the intention to deny

4

Complaint Objecting to Discharge and to Determine Dischargability of Debt

1  Plaintiffs of property and legal rights and to otherwise cause them injury.

2      19.    The debt to Plaintiffs should therefore be ruled as non-dischargeable under

3  Bankruptcy Code sections 523(a)(2)(A).

4                        SECOND CLAIM FOR RELIEF

5                    (Pursuant to 11 U.S.C. §§ 523(a)(6))

6      20.    Plaintiffs reallege and incorporate by reference the allegations set forth in

7  paragraphs 1 through 19, inclusive, of this Complaint as though fully set forth herein.

8      21.    In or around June, 2019, Plaintiffs were the owners of and had in their possession

9  certain property including furniture, closet organizers, appliances, and goods and materials

10  intended for use in the renovation of the Blumenthal Property and located at the Blumenthal

11  Property. Such property had a value to Plaintiffs of not less than $50,000 according to proof at

12  the time of trial.

13      22.    In or around June, 2019, Defendants either took such property or refused to

14  return such property when requested by Plaintiffs to do so, thus converting such property to

15  their own use and benefit contrary to the ownership and rights of Plaintiffs.

16      23.    In defrauding Plaintiffs, concealing and suppressing the false Representations, as

17  alleged above, and in taking Plaintiffs' property, Defendants engaged in conduct that caused a

18  conversion of Plaintiffs' funds and property that was both willful and malicious.

19      24.    As a proximate result of Defendants' fraud, Plaintiffs have general and special

20  damages and are entitled to compensation in an amount to be proved at trial of at least

21  $1,000,000.

22      25.    Defendants engaged in conduct described above with oppression, malice or fraud,

23  and with the intent to vex, injure, and annoy Plaintiffs and deprive them of their right to

24  property. Therefore, Plaintiffs are entitled to punitive damages in an amount to be proved at

25  trial. The debt to Plaintiffs is nondischargeable under Bankruptcy Code section 523(a)(6).

26      WHEREFORE, Plaintiffs respectfully request:

27      1.    That the debt owed to Plaintiffs not be discharged pursuant to 11 U.S.C. §§

28  523(a)(2)(A) and 523(a)(6);

5

Complaint Objecting to Discharge and to Determine Dischargeability of Debt

1        2.      That Plaintiffs be awarded their costs of suit herein;

2        3.      For pre-judgment interest according to proof at trial;

3        4.      For punitive damages in an amount sufficient to punish Defendants and to deter

4  Defendants and others from engaging in similar conduct; and

5        5.      That Plaintiffs be granted such other and further relief as is just and proper.

DATED:   January 15, 2021     By: _____

Glen J. Biondi
James E. Klinkert
Kelly A. Neavel
Attorney for Plaintiffs

6

Complaint Objecting to Discharge and to Determine Dischargability of Debt

                     **Josh Blumenthal <blucrew2017@gmail.com>**

---

## Fwd: Interior Design Letter of Agreement for Ross Court
1 message

---

**Therese Casey** <caseytherese@live.com>                    Sun, Jun 9, 2019 at 6:33 PM
To: "blucrew2017@gmail.com" <blucrew2017@gmail.com>

    Sent from my iPhone

    Begin forwarded message:

        **From:** "Lisette L. Young" <lisette.lanuza@gmail.com>
        **Date:** June 8, 2019 at 8:39:03 PM PDT
        **To:** caseytherese@live.com
        **Subject: Interior Design Letter of Agreement for Ross Court**

        Okay- here you go!

        Eddie will send you his proposal for construction once the initial trades have completed the
        walk through on Friday.  Let me know if you have any questions. I'll send the invoice for my
        deposit next.

        Have a great week!

        - L

---

**2 attachments**

 **Ross Court Renovation (2).pdf**
189K

 **ATT00001.htm**
1K



# LISETTE YOUNG

interior designer

RIVERSIDE, CA  92506
PHONE: 949-307-3714
EMAIL: junkyfreshstudio@gmail.com

Date:  6/8/19

Dear Josh and Monica,

It was great meeting with you again. Thank you for giving me the opportunity to fill your need of interior design services for the renovation of your home. This letter will serve as a Letter of Agreement for the Design services I will provide for you.

1.  **INTERIOR DESIGN:**  Includes onsite measure and review, material specifications and samples,  (interior and exterior paint, flooring, counters, wall treatments, fabrics, etc) color palette, lighting plan, space plan/layout, and renderings.

2.  **PROCUREMENT:**  Includes ordering, procurement and tracking of furniture, materials, fixtures, appliances and decor. Management of contractors, subcontractors, and other tradesmen. On site visits when necessary.



**Designer and Client agree as follows:**

**SCOPE:** Designer shall develop interior furnishing specifications that may include coloration, fabrics, lighting, and furnishings as required. Designer's services do not include contractor services, landscape design, or architecture. Designer shall consult other professionals such as lighting consultants, landscape architects, architects, and others. Client acknowledges that Project deadlines are subject to the vagaries of the marketplace and the performance of third parties.

**PAYMENT TERMS FOR DESIGN FEES:** Designer shall be compensated on an hourly basis at the rate of **$95/ per hour**. All hours or partial hours Designer is working on and/or for the Project will be considered design fees. Hourly charges will be invoiced to Client in 10-hour increments and are payable by Client upon receipt of invoice. Upon signing this Agreement, Designer shall receive a non refundable initial advance of **$1,500** which constitutes the minimum fee due Designer for Design Services. The advance will be credited against hourly fees otherwise payable by Client to Designer for Design Services at completion of project. All Design Fees are non refundable. Payments may be made by check, cash or credit card- invoice for advance to follow.

**PURCHASING OF PRODUCT**: Designer shall place orders for material, furniture, fixtures, appliances, etc. on behalf of Client, using the credit card authorized by Client in advance. Designer shall arrange delivery and installation of Designer-purchased furnishings and other items purchased on behalf of the Client for the Project. If available, Client will receive any discount Designer is subject to.  When practical, Designer will present specification to Client for Client to purchase direct from vendor. Client is wholly responsible for all items purchased by the Client.

**NO PRICE GUARANTEE:** Designer cannot guarantee prices of merchandise, interior installation, or other services not performed by Designer. Vendor pricing is subject to change and out of the control of Designer.

**REFUNDS & CANCELLATIONS**: Once purchased, most items cannot be returned or cancelled, therefore requests to do so will be assessed on a per-item basis with no guarantee of return or cancellation; custom items cannot be cancelled or returned. Requests for returns and cancellations will be billed hourly. Design Fees and reimbursable expenses are non-refundable, even when associated with a return or cancellation.

**REIMBURSABLE EXPENSES**: Client agrees to reimburse Designer for all out-of-pocket expenses actually incurred by Designer in relation to the Project, including but not limited to postage and handling, freight, delivery and storage costs.

**DRAWINGS**: Designer's drawings are conceptual in nature and are intended to set forth design intent; they are not to be used for architectural or engineering purposes. Designer services do not include modifications to structural, heating, air conditioning, plumbing, electrical, ventilation or other mechanical systems in the Project. Designer shall be held harmless for relying on the accuracy of information provided by the Client. Project drawings and documents cannot be used by Client for any purpose other than completion of Project by Designer as laid out in this agreement.

**OTHER CONTRACTORS & CONSULTANTS:** Designer provides no warranty, guarantee, certification, or responsibility for the performance, quality, or timely completion of any work performed or materials installed by other Contractors, nor their agents or employees. Designer shall cooperate with and observe Consultants for the purpose of general conformity of the design plan but is not responsible for their oversight.

**TERMINATION**: Designer or Client can terminate this agreement by notifying the other party in writing. Client will be responsible for any outstanding reimbursable charges and fees. All in-process proposals and orders will be completed by Designer and delivered to Client. If a balance remains in Client's account, the amount will be refunded less any outstanding reimbursable charges or design fees. Client agrees to take no action which is

intended, or would reasonably be expected, to harm the Designer's reputation or which would reasonably be expected to lead to unwanted or unfavorable publicity to the Designer.

**TERMS:** The parties agree that the terms of this Agreement may be changed only by a writing signed by both parties and that no oral changes or waivers are permitted.

**HAVE FUN**: I strive for the most comfortable, enjoyable, and transparent design experience possible! :)

If this letter of agreement meets your approval, please sign below.  Thanks again! I look forward to working with you!


_____

Printed Name and Signature (Client)


_____

Printed Name and Signature (Designer)





## CREDIT CARD AUTHORIZATION FORM

Date:  06/08/19

This form serves as authorization to utilize the credit card listed below in making purchases on behalf of Josh and Monica Blumenthal/Therese Casey for the interior design project contracted with Lisette Young.

Credit Card #: _____

Name on Card: _____

Exp. Date: _____

CVC Code: _____

Signature: _____

Gmail - Fwd: credit card auth form                     Page 1 of 1
Case 6:21-ap-01010-SY    Doc 45   Filed 02/07/23   Entered 02/07/23 09:04:24   Desc
Main Document    Page 41 of 81

 **Gmail**

**Josh Blumenthal <blucrew2017@gmail.com>**

## Fwd: credit card auth form
1 message

**Therese Casey** <caseytherese@live.com>          Sun, Jun 9, 2019 at 6:33 PM
To: "blucrew2017@gmail.com" <blucrew2017@gmail.com>

Sent from my iPhone

Begin forwarded message:

> **From:** "Lisette L. Young" <lisette.lanuza@gmail.com>
> **Date:** June 8, 2019 at 8:43:37 PM PDT
> **To:** caseytherese@live.com
> **Subject: credit card auth form**
>
> And here is the credit card authorization form. Thank you!

**2 attachments**

**CREDIT CARD AUTHORIZATION FORM- Ross Court.pdf**
126K

**ATT00001.htm**
1K



# PERSONAL CHECKING ACCOUNT, *3983

All completed checks from 6/1/2019 to 11/17/2019

| Date | Number | Description | Withdrawals | Deposits |
|------|--------|-------------|-------------|----------|
| 11/15/2019 | 1057 | CHECK | 1,099.00 | |
| 11/12/2019 | 1075 | CHECK | 3,062.30 | |
| 10/25/2019 | 1073 | CHECK | 1,940.00 | |
| 10/24/2019 | 1072 | CHECK | 11,148.00 | |
| 10/07/2019 | 1068 | CHECK | 1,500.00 | |
| 09/10/2019 | 1038 | CHECK | 4,056.45 | |
| 09/05/2019 | 1063 | CHECK | 5,106.00 | |
| 08/16/2019 | 1059 | CHECK | 14,000.00 | |
| 08/15/2019 | 1061 | CHECK | 9,000.00 | |
| 08/15/2019 | 1060 | CHECK | 70,725.50 | |
| 05/01/2019 | 1052 | CHECK | 15,000.00 | |
| 07/19/2019 | 1047 | CHECK | 1,920.00 | |
| 07/17/2019 | 1041 | CHECK | 2,550.00 | |



| | | | |
|---|---|---|---|
| 07/10/2019 | 1048 | CHECK | 5,525.00 |
| 07/05/2019 | 1046 | CHECK | 39,587.35 |
| 07/01/2019 | 1045 | CHECK | 31,669.88 |
| 06/25/2019 | 1044 | CHECK | 7,917.47 |



**INVOICE**
**All Pro Plumbing, Heating, Air & Electrical Inc.**
**5001 Ontario Mills Pkwy**
**Ontario, CA,91764**
**Email: service@allproplumbers.com**
**Ph: (888) 897-8615 Fax: (909) 974-2160**
**www.allproplumbers.com**
**Lic. No. 680718 C-36 C-20 C-10, A Engineering**

| | |
|---|---|
| **Estimate** | 30775406 |
| **Job** | 30732529 |
| **Estimate Date** | 11/15/2019 |
| **Technicians** | Lucas Mefford |
| | Shawn Greany |
| **Customer PO** | |

**Billing Address**
Monica Blumenthal
14201 Ross Court
Rancho Cucamonga, CA 91739 USA

**Job Address**
Monica Blumenthal
14201 Ross Court
Rancho Cucamonga, CA 91739 USA

**Estimate Details**

Electrical walk thru: Customer had us look at the electrical so we could help him correct the issues he has encountered.

| Task # | Description | Quantity | Your Price | Your Total |
|---|---|---|---|---|
| APSUM | Summary of Findings:<br>Upon arrival discovered several issues with the electrical. A brief description of what we identified are as follows:<br><br>The kitchen outlet spacing is off because there is not enough outlets for the kitchen counter. One counter is over 6 feet long and only has 1 plug. The kitchen recessed lights are right up against the cabinet. Will need to relocate to restore symmetry. The is no outlet for the mini fridge, There needs to be an outlet for the counter-top near the kitchen mini fridge. There needs to be another outlet to the right of the sink. The disposal does not have a cord attached. There is a sub panel behind the double oven cabinet. The sub panel is not serviceable and is a fire hazard in its current location. There are several junction boxes with wires that have no wire-nut protection or even a cover plate. The kitchen oven has no power, the oven requires a dedicated circuit of 40 amps. This circuit will need to be ran from the main panel to the kitchen. This will require several drywall holes to run the wire or conduit. There is only one switch for the kitchen lights and it is at the stair landing. The kitchen has two ways to enter. The stair lights do not have a switch at the base. The step lights need troubleshooting to determine the switching and to get them to work properly. None of the bath lights are centered on the sink, cabinet or even the mirror. The master bath light switch is behind the door same as one of the bedrooms. Both need to be removed and rewired. One GFCI outlet is in-op. Several of the plugs in the home have paint or texture on them as well as most have not been replaced. We recommend the upstairs outlets that are original be replaced and the installed outlets be inspected for proper operation. Several of the switches have been deleted or miss wired. Several of the downstairs outlets that have paint or texture on them need to be replaced. Last the exterior 50 amp dedicated circuit for the travel trailer is utilizing interior boxing. The junction boxes need to be replaced with weatherproof boxes, the 50 amp outlet should be in a weatherproof housing protecting the cord from the elements. We will need to completely re-wire and install a travel trailer outlet in proper boxing. During rewire we will determine if there is conduit in the wall protecting the wires. Also during repairs discovered several unprotected splices buried inside a dead space behind the oven that were not serviceable. Junctions will have to be relocated to a serviceable area. During replacement of ceiling fans discovered two ceiling fan boxes that were damaged and broken from overtorquing expansion box. The GFI in the laundry room is obstructed by the washer dryer. The recessed cans that were hidden above the cabinets will be deleted. Recessed cans in the hallway do you not have spring mounts for the trims And the light fixture is not centered on the hallway. | 1.00 | $0.00 | $0.00 |
| APSUM | Summary of Findings: While running the oven circuit from the panel to the kitchen and inspecting the electrical in the master bedroom discovered the fireplace opening was poorly reinforced and you cannot hang a TV due to lack of framing structure. Also the vent pipe going through the roof is still open and is creating a draft into the enclosure. Advised customer of the conditions. | 1.00 | $0.00 | $0.00 |

| | |
|---|---|
| **Sub-Total** | $0.00 |
| **Tax** | $0.00 |
| **Total** | $0.00 |

DESCRIPTION OF THE PROJECT AND DESCRIPTION OF THE SIGNIFICANT MATERIALS TO BE USED AND EQUIPMENT TO BE INSTALLED.

Notice of Cancellation may be sent to: 5001 Ontario Mills Pkwy, Ontario, CA, 91764
THANK YOU FOR YOUR BUSINESS!

---

**AUTHORIZATION TO WORK: PAYMENT OF THIS CONTRACT IS DUE IMMEDIATELY UPON COMPLETION OF WORK.** I, the undersigned, am owner/authorized representative/tenant of the premises at which the work mentioned above is to be done. I hereby authorize you to perform services mentioned on the left column, and to use such labor and materials as necessary. I have read this contract, including the terms and conditions on the reverse side hereof and agree to be bound by all the terms contained here. I have received a copy of this contract and Notice to Owner. All parts will be removed from premises and discarded unless otherwise specified herein. All work is done on a FIXED PRICE. No BREAKDOWN will be provided. I hereby authorize you to proceed with the above work at the **Contract Price** of:
$0.00
**These Terms and Conditions are expressly incorporated into this contract**
11/18/2019

## **TERMS & CONDITIONS**

1. WORK LIMITED TO WORK DESCRIBED: Contractor will not perform any other work or trade than that which is specifically described herein, including but not limited to: carpentry, plaster/wall work, electrical work, painting, tile work, landscaping, masonry, flooring, roofing, paving, etc., even if that work is necessary to restore the premises after the described work is performed.

2. CONTRACT PERFORMANCE: All work performed by Contractor and its subcontractors will be done in a good and workmanlike manner in accordance with accepted trade practices. Contractor will remove from the property debris and surplus material created by its operation and leave it in a neat and broom clean condition.

3. CHANGES IN THE WORK: Should the Owner or any public body or inspector direct any modifications or addition to the work covered by this contract, the contract price shall be adjusted accordingly. The change in the work caused by direction of public body or inspector, if necessary to complete the originally intended scope of work shall be Contractor's actual cost of all labor, equipment, subcontracts and materials, plus 5% for its overhead and 10% for profit shall be the change in contract price. Such change may also increase the time within which the contract is to be completed. Further, Contractor shall promptly notify the Owner of: (a) physical conditions at the site differing materially from those indicated in this contract, or (b) unknown physical conditions differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in this contract, expressly including, but not limited to, work performed in variance to the then existing Building Code. No extra work resulting from such differing or unknown conditions shall be required to be performed unless agreed in writing. Inability or Owner and Contractor to agree to a change in contract price shall be grounds for termination of this agreement.

4. OWNER'S RESPONSIBILITY FOR SITE CONDITIONS: Owner is responsible for supply of water, gas, sewer and electrical utilities to the site as necessary unless otherwise agreed to in writing. Owner shall allow and provide Contractor and its equipment access to the property. Owner is responsible for securing, removal and protection of all persons and/or property, and its contents, including but not limited to adults, children, animals, cabinets and their contents, fixtures, flooring, walls, tiling, carpets, drapes, furniture, and vegetation, during and upon completion or work, and shall hold harmless and indemnify Contractor against all claims arising out of Owner's failure to do so. Contractor is not responsible for damage to the same or for any damage to carpets, drapes, furniture, driveways, lawns, shrubs, etc.

5. DELAYS: Contractor agrees to start and diligently pursuer work through to completion, but shall not be responsible for delays for any of the following reasons: failure of the issuance of all necessary building permits within a reasonable length of time, acts of neglect or omission of Owner or Owner's agents, acts of God, foul weather, extra work ordered by Owner, inability to secure material through regular recognized channels, or delays caused by inspection or changes ordered by the inspectors of authorized governmental bodies, or other causes beyond Contractor's reasonable control.

6. SOLUTION NOT PERFORMED: If suggested options are not chosen by the customer and a failure is experienced, the contractor is held harmless.

7. STOPPAGES:
A. Contractor will not clean any drainline or sewer lines through a roof vent, if deemed unsafe.
B. Any drain cleaning cable which becomes stuck in the line is the responsibility of the customer for removal and/or additional repairs.
C. If a sewage spill is deemed hazardous material, the cost of clean up is the responsibility of the customer.

8. Payment:
A. All work is done on a fixed CONTRACT PRICE. The price includes materials, tax and labor. NO BREAKDOWN WILL BE PROVIDED!

Payment for the work described herin this agreement shall be immediately due upon completion of the work, unless otherwise specified in writing.
B. No deduction shall be made from payments due contractor on account of penalty, liquidated damages, back-charges or defects in the work. Furthermore, customer agrees and recognizes that payment for services rendered by contractor when due is an express condition precedent to contractor continuing work as herein described in this agreement. Customer recognizes that the failure to pay for services when due shall entitle contractor to terminate work immediately. In the event that contractor terminates work for non-payment as herein described, contractor shall be entitles to all of its reasonable expenses including, but not limited to , cost of labor, materials, a reasonable allowance for overhead and profit, and all other compensation as allowed by law. All warranties will be void.
C. A monthly service charge of 1 ½ % will be added after 10 days. I agree to pay reasonable attorney's fees and court costs in the event of legal action. If my check does not clear, I realize I could be liable for 3 times the amount of the check, in no case more than $1,500 and in no case less than $100, all set forth in the California Civil Code Section 1719, plus the face value of the check and court costs.

9. DISPUTE RESOLUTION-SMALL CLAIMS: Claims outside of the jurisdiction of the small claims court may be arbitrated as provided below. Both parties agree to have all disputes under this agreement litigated in the courts of the county of San Bernardino and only the laws of the state of California shall apply to any resolutions of disputes under this contract.

10. MATERIALS WARRANTY: Warranties for materials, assemblies, appliances and the like, shall be those warranties provided by the manufacturer or supplier of that item rather than based on Contractor's warranty herein. Contractor shall assemble and provide to Owner all such manufacturer's warranties. THIS IS THE ONLY WARRANTY PROVIDED FOR SUCH MATERIALS, ASSEMBLIES, APPLIANCES AND THE LIKE.

11. HAZARDOUS SUBSTANCES: Unless the contract specifically calls for the removal, disturbance, or transportation of hazardous substances, including but not limited to lead, asbestos, PCB, toxic molds or other hazardous substances, the parties acknowledge that such work requires special procedures, precautions, and/or licenses. Therefore, unless the contract specifically calls for same, if Contractor encounters such substances, Contractor shall immediately stop work and allow the Owner to obtain a qualified asbestos and/or hazardous material contractor to perform the work or Contractor may perform the work itself at Contractor's option. Said work will be treated as an extra under this contract.

12. TEXT NOT PART OF TERMS OF CONTRACT: Text contained in this form which is small than 10pt type is not intended to be incorporated in the terms of the contract but is intended solely as instructions to the completion of the form. Such text may only be used as aid in interpretation.

13. VALIDITY: In case one or more of the provisions of this contract or any application thereof shall be invalid, unenforceable or illegal, the validity, enforceability and legality of the remaining provisions and any other application shall not in any way be impaired thereby.

14. MOLD RELEASE: Contractor makes no representation or warranty, express, implied or otherwise regarding mold, fungi, rust, corrosion or other bacteria or organisms. Contractor shall have no duty or responsibility or liability all of which is expressly waived by you for losses, fines, penalties, testing, analysis, monitoring, cleaning, removal, disposal, abatement, decontamination, remediation, repair, injury, sickness or disease associated with mold, fungi, rust, corrosion or other bacteria or organisms. Any implied warranty of workmanlike construction, implied warranty of habitability or an implied warranty of fitness for a particular use hereby waived and disclaimed.

## NOTE ABOUT EXTRA WORK AND CHANGE ORDERS

You, the buyer may not require a contractor to perform extra and/or change-order work without providing written authorization prior to the commencement of any work covered by the new change order. Extra work or a change order is not enforceable against a buyer unless the change order also identifies all of the following in writing prior to the commencement of any work coverd by the new change order:

(i)     The scope of work encompassed by the order.
(ii)    The amount to be added or subtracted from the contract.
(iii)   The effect the order will make in the progress payments or the completion date.

The contractor's failure to comply with the requirements of this paragraph does not does not preclude the recovery of compensation for work performed based upon legal or equitable remedies designed to prevent unjust enrichment.

Change orders required by the building department at the jobsite shall be considered and incorporated into the contract without being signed by both parties.

## MECHANICS LIEN WARNING

Anyone who helps improve your property, but who is not paid, may record what is called a mechanics lien on your property. A mechanics lien is a claim, like a mortgage or home equity loan, made against your property and recorded with the county recorder.

Even if you pay your contractor in full, unpaid subcontractors, suppliers, and laborers who helped to improve your property may record mechanics liens and sue you in court to foreclose the lien. If a court finds the lien is valid, you could be forced to pay twice or have a court officer sell your home to pay the lien. Liens can also affect your credit. To preserve their right to record a lien, each subcontractor and material supplier must provide you with a document called a 'Preliminary Notice.' This notice is not a lien. The purpose of the notice is to let you know that the person who sends you the notice has the right to record a lien on your property if he or she is not paid.

**BE CAREFUL**. The Preliminary Notice can be sent up to 20 days after the subcontractor starts work or the supplier provides material. This can be a big problem if you pay your contractor before you have received the Preliminary Notices. You will not get Preliminary Notices from your prime contractor or from laborers who work on your project. The law assumes that you already know they are improving your property.

**PROTECT YOURSELF FROM LIENS**. You can protect yourself from liens by getting a list from your contractor of all the subcontractors and material suppliers that work on your project. Find out from your contractor when these subcontractors started work and when these suppliers delivered goods or materials. Then wait 20 days, paying attention to the Preliminary Notices you receive.

**PAY WITH JOINT CHECKS**. One way to protect yourself is to pay with a joint check. When your contractor tells you it is time to pay for the work of a subcontractor or supplier who has provided you with a Preliminary Notice, write a joint check payable to both the contractor and the subcontractor or material supplier. For other ways to prevent liens, visit CSLB's Internet Web site at www.cslb.ca.gov or call CSLB at 800-321-CSLB (2752).

**REMEMBER, IF YOU DO NOTHING, YOU RISK HAVING A LIEN PLACED ON YOUR HOME.** This can mean that you may have to pay twice, or face the forced sale of your home to pay what you owe.

## INFORMATION ABOUT THE CONTRACTORS' STATE LICENSE BOARD (CSLB):

CSLB is the state consumer protection agency that licenses and regulates construction contractors.
Contact CSLB for information about the licensed contractor you are considering, including information about disclosable complaints, disciplinary actions and civil judgments that are reported to CSLB.
 Use only licensed contractors. If you file a complaint against a licensed contractor within the legal deadline (usually four years), CSLB has authority to investigate the complaint. If you use an unlicensed contractor, CSLB may not be able to help you resolve your complaint. Your only remedy may be in civil court, and you may be liable for damages arising out of any injuries to the unlicensed contractor or the unlicensed contractor's employees.
For more information: Visit CSLB's Internet Web site at www.cslb.ca.gov Call CSLB at 800-321-CSLB (2752) Write CSLB at P.O. Box 26000, Sacramento, CA 95826.

**Notice of Cancellation**

_____

Date of Transaction

You may cancel this transaction, without any penalty or obligation, within three business days from the above date.

If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within 10 days following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be canceled.

If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within 20 days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice, or any other written notice, or send a telegram.

To _____.
(Name of Seller)

At_____
(address of seller's place of business)

Not later than midnight of _____.
                    (Date)
I hereby cancel this transaction. _____
                    (Date)

_____
(Buyer's signature)

# ALL PRO
### Plumbing · Heating · Air · Electrical
... problem solved

**INVOICE**
**All Pro Plumbing, Heating, Air & Electrical Inc.**
**5001 Ontario Mills Pkwy**
**Ontario, CA,91764**
**Email: service@allproplumbers.com**
**Ph: (888) 897-8615 Fax: (909) 974-2160**
**www.allproplumbers.com**
**Lic. No. 680718 C-36 C-20 C-10, A Engineering**

| | |
|---|---|
| **Invoice** | 30693134 |
| **Invoice Date** | 11/11/2019 |
| **Completed Date** | 11/11/2019 |
| **Technicians** | Mike Greany |
| | Lic. #98126 AA |
| | David Gilreath |
| **Customer PO** | |

**Billing Address**
Monica Blumenthal
14201 Ross Court
Rancho Cucamonga, CA 91739 USA

**Job Address**
Monica Blumenthal
14201 Ross Court
Rancho Cucamonga, CA
91739 USA

## Description of Work

Upon arrival:
Downstairs unit:
Found not properly installed. Flex line in gas valve, unit return not properly sized. Condenser outside sitting on pad that was on top of another pad, not up to code. Return not properly insulated for controlled air

Upstairs unit: in the attic had flex line running in to gas valve duct work was original to the house not rated to handle the heat load. Undersized duct work as well. Equipment to up to code.
Registers throughout the house were stamped faced and were restrictive airflow. Low insulation in the attic. 2 duct runs were replaced that were undersized

| | |
|---|---|
| **Sub-Total** | $0.00 |
| **Tax** | $0.00 |
| **Total Due** | $0.00 |
| **Balance Due** | $0.00 |

DESCRIPTION OF THE PROJECT AND DESCRIPTION OF THE SIGNIFICANT MATERIALS TO BE USED AND EQUIPMENT TO BE INSTALLED.

Notice of Cancellation may be sent to: 5001 Ontario Mills Pkwy, Ontario, CA, 91764
THANK YOU FOR YOUR BUSINESS!

**AUTHORIZATION TO WORK: PAYMENT OF THIS CONTRACT IS DUE IMMEDIATELY UPON COMPLETION OF WORK.** I, the undersigned, am owner/authorized representative/tenant of the premises at which the work mentioned above is to be done. I hereby authorize you to perform services mentioned on the left column, and to use such labor and materials as necessary. I have read this contract, including the terms and conditions on the reverse side hereof and agree to be bound by all the terms contained here. I have received a copy of this contract and Notice to Owner. All parts will be removed from premises and discarded unless otherwise specified herein. All work is done on a FIXED PRICE. No BREAKDOWN will be provided. I hereby authorize you to proceed with the above work at the **Contract Price** of:
$0.00
**These Terms and Conditions are expressly incorporated into this contract**
**THE DOWN PAYMENT MAY NOT EXCEED $1,000.00 OR 10 PERCENT OF THE CONTRACT PRICE, WHICHEVER IS LESS.**

**SCHEDULE OF PROGRESS PAYMENTS: The schedule of progress payments must specifically describe each phase of work, including the type and amount of work or services scheduled to be supplied in each phase, along with the amount of each proposed progress payment. IT IS AGAINST THE LAW FOR A CONTRACTOR TO COLLECT PAYMENT FOR WORK NOT YET COMPLETED, OR FOR MATERIALS NOT YET DELIVERED. HOWEVER, A CONTRACTOR MAY REQUIRE A DOWN PAYMENT.**

**Attached are the List of Documents to be Incorporated in the Contract:**

**Terms & Conditions**
**Note About Extra Work And Change Orders**
**Mechanics Lien Warning**
**Information About the Contractors State License Board**
**Notice of Cancellation**
**THREE-DAY RIGHT TO CANCEL**
**WAIVER OF RIGHT TO CANCEL**
**MISCELLANEOUS FORMS**

**You, the homeowner (buyer) or tenant have the right to require the Contractor to furnish you with a performance and payment bond, however the Contractor can require you to pay for that bond**

**You are entitled to a completely filled in copy of this Contract, signed by both you and the Contractor, before any work may be started**

**Commercial General Liability Insurance (CGL)**
**All Pro Plumbing, Heating, Air & Electrical carries Commercial General Liability.**
**Insurance written by: FEDERATED INSURANCE**
**You may call: 1-800-533-0472 to check the contractor's insurance coverage.**

**Worker's Compensation Insurance**
**All Pro Plumbing, Heating, Air & Electrical carries Worker's Compensation Insurance for all employees.**

**Upon Satisfactory payment being made for any portion of the work performed, the contractor shall, prior to any further**

**payment being made, furnish to the person contracting for the home improvement a full and unconditional release, from any claim or mechanic's lien pursuant to Section 3114 of the civil code, for that portion of the work for which payment has been made.**

**Acknowledgement of Satisfactory Completion and Acceptance of Work.** Buyer acknowledges that the work described in this contract has been completed and that the workmanship appears to be within the terms of the contract.

Nothing in this acknowledgment is intended to waive any rights of the Buyer as to work or workmanship which is not readily apparent by visual inspection. Acceptance by Buyer is conclusive evidence of the date of completion within the meaning of Civil Code 3086(b) for the purposes of the commencement of time to record a lien.

**Contract Price:**
$0.00

## TERMS & CONDITIONS

1. WORK LIMITED TO WORK DESCRIBED: Contractor will not perform any other work or trade than that which is specifically described herein, including but not limited to: carpentry, plaster/wall work, electrical work, painting, tile work, landscaping, masonry, flooring, roofing, paving, etc., even if that work is necessary to restore the premises after the described work is performed.

2. CONTRACT PERFORMANCE: All work performed by Contractor and its subcontractors will be done in a good and workmanlike manner in accordance with accepted trade practices. Contractor will remove from the property debris and surplus material created by its operation and leave it in a neat and broom clean condition.

3. CHANGES IN THE WORK: Should the Owner or any public body or inspector direct any modifications or addition to the work covered by this contract, the contract price shall be adjusted accordingly. The change in the work caused by direction of public body or inspector, if necessary to complete the originally intended scope of work shall be Contractor's actual cost of all labor, equipment, subcontracts and materials, plus 5% for its overhead and 10% for profit shall be the change in contract price. Such change may also increase the time within which the contract is to be completed. Further, Contractor shall promptly notify the Owner of: (a) physical conditions at the site differing materially from those indicated in this contract, or (b) unknown physical conditions differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in this contract, expressly including, but not limited to, work performed in variance to the then existing Building Code. No extra work resulting from such differing or unknown conditions shall be required to be performed unless agreed in writing. Inability or Owner and Contractor to agree to a change in contract price shall be grounds for termination of this agreement.

4. OWNER'S RESPONSIBILITY FOR SITE CONDITIONS: Owner is responsible for supply of water, gas, sewer and electrical utilities to the site as necessary unless otherwise agreed to in writing. Owner shall allow and provide Contractor and its equipment access to the property. Owner is responsible for securing, removal and protection of all persons and/or property, and its contents, including but not limited to adults, children, animals, cabinets and their contents, fixtures, flooring, walls, tiling, carpets, drapes, furniture, and vegetation, during and upon completion or work, and shall hold harmless and indemnify Contractor against all claims arising out of Owner's failure to do so. Contractor is not responsible for damage to the same or for any damage to carpets, drapes, furniture, driveways, lawns, shrubs, etc.

5. DELAYS: Contractor agrees to start and diligently pursue work through to completion, but shall not be responsible for delays for any of the following reasons: failure of the issuance of all necessary building permits within a reasonable length of time, acts of neglect or omission of Owner or Owner's agents, acts of God, foul weather, extra work ordered by Owner, inability to secure material through regular recognized channels, or delays caused by inspection or changes ordered by the inspectors of authorized governmental bodies, or other causes beyond Contractor's reasonable control.

6. SOLUTION NOT PERFORMED: If suggested options are not chosen by the customer and a failure is experienced, the contractor is held harmless.

7. STOPPAGES:
A. Contractor will not clean any drainline or sewer lines through a roof vent, if deemed unsafe.
B. Any drain cleaning cable which becomes stuck in the line is the responsibility of the customer for removal and/or additional repairs.
C. If a sewage spill is deemed hazardous material, the cost of clean up is the responsibility of the customer.

8. Payment:
A. All work is done on a fixed CONTRACT PRICE. The price includes materials, tax and labor. NO BREAKDOWN WILL BE PROVIDED!

Payment for the work described herin this agreement shall be immediately due upon completion of the work, unless otherwise specified in writing.
B. No deduction shall be made from payments due contractor on account of penalty, liquidated damages, back-charges or defects in the work. Furthermore, customer agrees and recognizes that payment for services rendered by contractor when due is an express condition precedent to contractor continuing work as herein described in this agreement. Customer recognizes that the failure to pay for services when due shall entitle contractor to terminate work immediately. In the event that contractor terminates work for non-payment as herein described, contractor shall be entitles to all of its reasonable expenses including, but not limited to , cost of labor, materials, a reasonable allowance for overhead and profit, and all other compensation as allowed by law. All warranties will be void.
C. A monthly service charge of 1 ½ % will be added after 10 days. I agree to pay reasonable attorney's fees and court costs in the event of legal action. If my check does not clear, I realize I could be liable for 3 times the amount of the check, in no case more than $1,500 and in no case less than $100, all set forth in the California Civil Code Section 1719, plus the face value of the check and court costs.

9. DISPUTE RESOLUTION-SMALL CLAIMS: Claims outside of the jurisdiction of the small claims court may be arbitrated as provided below. Both parties agree to have all disputes under this agreement litigated in the courts of the county of San Bernardino and only the laws of the state of California shall apply to any resolutions of disputes under this contract.

10. MATERIALS WARRANTY: Warranties for materials, assemblies, appliances and the like, shall be those warranties provided by the manufacturer or supplier of that item rather than based on Contractor's warranty herein. Contractor shall assemble and provide to Owner all such manufacturer's warranties. THIS IS THE ONLY WARRANTY PROVIDED FOR SUCH MATERIALS, ASSEMBLIES, APPLIANCES AND THE LIKE.

11. HAZARDOUS SUBSTANCES: Unless the contract specifically calls for the removal, disturbance, or transportation of hazardous substances, including but not limited to lead, asbestos, PCB, toxic molds or other hazardous substances, the parties acknowledge that such work requires special procedures, precautions, and/or licenses. Therefore, unless the contract specifically calls for same, if Contractor encounters such substances, Contractor shall immediately stop work and allow the Owner to obtain a qualified asbestos and/or hazardous material contractor to perform the work or Contractor may perform the work itself at Contractor's option. Said work will be treated as an extra under this contract.

12. TEXT NOT PART OF TERMS OF CONTRACT: Text contained in this form which is small than 10pt type is not intended to be incorporated in the terms of the contract but is intended solely as instructions to the completion of the form. Such text may only be used as aid in interpretation.

13. VALIDITY: In case one or more of the provisions of this contract or any application thereof shall be invalid, unenforceable or illegal, the validity, enforceability and legality of the remaining provisions and any other application shall not in any way be impaired thereby.

14. MOLD RELEASE: Contractor makes no representation or warranty, express, implied or otherwise regarding mold, fungi, rust, corrosion or other bacteria or organisms. Contractor shall have no duty or responsibility or liability all of which is expressly waived by you for losses, fines, penalties, testing, analysis, monitoring, cleaning, removal, disposal, abatement, decontamination, remediation, repair, injury, sickness or disease associated with mold, fungi, rust, corrosion or other bacteria or organisms. Any implied warranty of workmanlike construction, implied warranty of habitability or an implied warranty of fitness for a particular use hereby waived and disclaimed.

## NOTE ABOUT EXTRA WORK AND CHANGE ORDERS

You, the buyer may not require a contractor to perform extra and/or change-order work without providing written authorization prior to the commencement of any work covered by the new change order. Extra work or a change order is not enforceable against a buyer unless the change order also identifies all of the following in writing prior to the commencement of any work coverd by the new change order:

(i)     The scope of work encompassed by the order.
(ii)    The amount to be added or subtracted from the contract.
(iii)   The effect the order will make in the progress payments or the completion date.

The contractor's failure to comply with the requirements of this paragraph does not does not preclude the recovery of compensation for work performed based upon legal or equitable remedies designed to prevent unjust enrichment.

Change orders required by the building department at the jobsite shall be considered and incorporated into the contract without being signed by both parties.

## MECHANICS LIEN WARNING

Anyone who helps improve your property, but who is not paid, may record what is called a mechanics lien on your property. A mechanics lien is a claim, like a mortgage or home equity loan, made against your property and recorded with the county recorder.

Even if you pay your contractor in full, unpaid subcontractors, suppliers, and laborers who helped to improve your property may record mechanics liens and sue you in court to foreclose the lien. If a court finds the lien is valid, you could be forced to pay twice or have a court officer sell your home to pay the lien. Liens can also affect your credit. To preserve their right to record a lien, each subcontractor and material supplier must provide you with a document called a 'Preliminary Notice.' This notice is not a lien. The purpose of the notice is to let you know that the person who sends you the notice has the right to record a lien on your property if he or she is not paid.

**BE CAREFUL**. The Preliminary Notice can be sent up to 20 days after the subcontractor starts work or the supplier provides material. This can be a big problem if you pay your contractor before you have received the Preliminary Notices. You will not get Preliminary Notices from your prime contractor or from laborers who work on your project. The law assumes that you already know they are improving your property.

**PROTECT YOURSELF FROM LIENS**. You can protect yourself from liens by getting a list from your contractor of all the subcontractors and material suppliers that work on your project. Find out from your contractor when these subcontractors started work and when these suppliers delivered goods or materials. Then wait 20 days, paying attention to the Preliminary Notices you receive.

**PAY WITH JOINT CHECKS**. One way to protect yourself is to pay with a joint check. When your contractor tells you it is time to pay for the work of a subcontractor or supplier who has provided you with a Preliminary Notice, write a joint check payable to both the contractor and the subcontractor or material supplier. For other ways to prevent liens, visit CSLB's Internet Web site at www.cslb.ca.gov or call CSLB at 800-321-CSLB (2752).

**REMEMBER, IF YOU DO NOTHING, YOU RISK HAVING A LIEN PLACED ON YOUR HOME.** This can mean that you may have to pay twice, or face the forced sale of your home to pay what you owe.

## INFORMATION ABOUT THE CONTRACTORS' STATE LICENSE BOARD (CSLB):

CSLB is the state consumer protection agency that licenses and regulates construction contractors.
Contact CSLB for information about the licensed contractor you are considering, including information about disclosable complaints, disciplinary actions and civil judgments that are reported to CSLB.
Use only licensed contractors. If you file a complaint against a licensed contractor within the legal deadline (usually four years), CSLB has authority to investigate the complaint. If you use an unlicensed contractor, CSLB may not be able to help you resolve your complaint. Your only remedy may be in civil court, and you may be liable for damages arising out of any injuries to the unlicensed contractor or the unlicensed contractor's employees.
For more information: Visit CSLB's Internet Web site at www.cslb.ca.gov Call CSLB at 800-321-CSLB (2752) Write CSLB at P.O. Box 26000, Sacramento, CA 95826.

**Notice of Cancellation**

_____

Date of Transaction

You may cancel this transaction, without any penalty or obligation, within three business days from the above date.

If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within 10 days following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be canceled.

If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within 20 days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice, or any other written notice, or send a telegram.

To _____.
(Name of Seller)

At_____
(address of seller's place of business)

Not later than midnight of _____.
                          (Date)
I hereby cancel this transaction. _____
                                  (Date)

_____
(Buyer's signature)



**Therese** >

Mon, Aug 26, 7:06 AM

I ended up having to take the trailer to the house because there weren't many other options. Its probably best if you didn't come up to the house this week. As of now I plan on spending time over there cleaning up the garage and selling things off . But given everything else going on, I'd prefer to just handle the balance of the house on my own. I'm not going to do the 1 foot in and 1 foot out thing. So I'll let them know this morning my plans going forward.

But I do want to get the wire reconciled before I move forward with anything else. Just send over everything once it's completed

Read 8/26/19

 00:04 

Can you call me please

  iMessage 

       



Therese >

Read 8/26/19

00:04

Can you call me please

This is not a conversation we should have over text. Please call me. I want to discuss all this. I want to see the house through. I'm not sure what you mean by one foot in and one out. I am and always have been all in. What about a hotel? I will cover the cost. It will be a mess trying to get done and having you all there. I am sorry this is happening like this. It feels awful all the way around. Please Josh. Let the house get done. We are almost there. My heart and soul has always been all in everything I do for all of you. I am not quitting. I have garden beds to build for my grandsons and projects with you. There is plants and planting...I know you are hurt and I am so sorry. I love you all so much. Please call me.

iMessage













                                    **Josh Blumenthal <blucrew2017@gmail.com>**

---

## (no subject)
10 messages

---

**Josh Blumenthal** <blucrew2017@gmail.com>                    Mon, Sep 23, 2019 at 9:16 AM
To: youngedwardj@yahoo.com

Eddie

Following up on my text as to not limit my concerns on the billing to just the demo of bathrooms.


Understand the first inv #2 was paid according to terms however before executing the terms I was advised all checks would be deposited prematurely to offset the 10 day hold. From that point forward I ignored the terms and wrote additional checks in full and know Therese has as well. The frustration I have with my actions and failure to follow the terms compounded with the inability of almost every job or task to be executed to an acceptable level becomes overwhelming. In response to this I need to go on record and note the following:

- From invoices 2, 4, 5, 9 and 10 the only job(s) I would consider complete and if not already can be paid in full are:
  o Flooring demo and install

From there I don't consider any other job/task 'complete' as each has a varying number of open tasks still pending. This shouldn't be taken as the complaint what becomes the complaint above the quality of work is having been asked to pay in full every subsequent invoice.

How this ties in to our conversation last week is simply this, if there's approximately $250K in payments made to your company and only $12K can be considered finished then I shouldn't have been asked for $125K or more prior to today. I'm not happy that between myself and Therese it reached the point of prematurely paying this much but compounded with other concerns and issues billing, payment and discrepancies need to be addressed before we can move forward.

I'm open to discussing the work you feel is complete and ready for payment in full. This is an important step in order to account for what shouldn't be cashed as part of the 10/40/50 schedule.

Next are the credits for sales tax. I have 1 documented mention of a credit from inv #4 applied on Inv #9 which leaves sales tax outstanding for Inv #2 & 5 or about $9,000.

Now, from a customer standpoint the credit isn't reflected on the invoice rather handwritten notes that it was applied. For the credit covering the remaining sales tax I'll require a check.

The billing in general has really created the majority of the problems here  because on one hand I know what Ive paid out and when I look at the quality of work in exchange, you can see how it would get someone going.  And on the design side I'm being forced to accept a cabinet style I dont like and dont want. Surely you can understand how all of this is upsetting and discouraging.

I have demo listed 3 times, another concern is jobs details that are including what seems to be unrelated work and in some instances appear to be work tied to another invoiced task. For example demo of upstairs and downstairs bathroom in my opinion has nothing to do with demo and install of flooring.

As you know I paid the windows in full but I was sent a 2nd invoice to which Lisette said a check will be sent. I assume Young & Associates is covering the 2nd order? Come to find out the large window on the side yard was ordered in error? Does the company accept returns? If not, did you plan on issuing a credit for the original window ordered in error?

 I wanted to elaborate on the billing concerns once I realized my text message limited the concerns to the bathroom demo which isn't the case. I have many more questions which we can discuss in person.

Other than that I have issue with the workflow and essentially any added cost for having to revisit jobs. Such as the supplemental electric and landscaping. These are 2 areas that I'm totally confused over.  I know this industry is foreign to me, but pricing product or service is not. Everything comes at a cost, the more efficient the less cost involved. Not doing all the concrete work at once creates added cost. Not looking at all the projects pending and how one impacts or is impacted by another adds cost.

Understand the mindset of tackling the small fixes in the final stage is not what I am tackling here. It's the large scale steps that arent being completed like finishing the block wall with stucco r  when other areas of the house received stucco treatment. There's a level of efficiency here that's keeping us displaced from our home, its frustrating and costly. With that I have issues with time and attention and where we should be quality wise vs where we are. But what matters is getting this work done, done right, done efficiently and to code and for a reasonable amount.

I wont be forced to accept something that's substandard, not to expectation or done to someone else's standard of quality. Not when the project value is nearing $350K.


Josh


Josh

---

**Edward Young** <youngedwardj@yahoo.com>                        Tue, Sep 24, 2019 at 9:42 PM
Reply-To: "youngedwardj@yahoo.com" <youngedwardj@yahoo.com>
To: "blucrew2017@gmail.com" <blucrew2017@gmail.com>, "Caseytherese@live.com"
<Caseytherese@live.com>, "Lisette L. Young" <lisette.lanuza@gmail.com>

Josh,
I will be more than glad to have a productive conversation with you going over this project. I can assure you that everything is accounted for. But this is a conversation that needs to be had with all parties involved including Lisette, Therese, Monica, and myself. Being that I was following orders given and approvals were made by one of the persons mentioned, In which you provided the finances and also approved work that was performed so in order to get the record straight and this matter resolved in a timely and amicable manner a conference call with all parties involved is recommended. I propose a conference call Friday evening 7pm. And for the record you are not allowing us to continue and we have come to a stand still because we cannot continue with plumbing finishes because that involves the cabinets and countertops to be installed prior, in which is being held up by you refusing the cabinets  , so also until the cabinet situation is resolved that hinders our forward progress. I hope we can resolve this Friday and finish this project.

                    Eddie Young

Sent from Yahoo Mail on Android

On Mon, Sep 23, 2019 at 9:20 AM, Josh Blumenthal
<blucrew2017@gmail.com> wrote:

[Quoted text hidden]

---

**Josh Blumenthal** <blucrew2017@gmail.com>                Wed, Sep 25, 2019 at 12:57 PM
To: "youngedwardj@yahoo.com" <youngedwardj@yahoo.com>

Eddie

Friday night isn't available. Tomorrow or Friday during the day are best.

The conversation requires we meet in person preferable on site as the work both in progress, pending and completed is in part what needs to be discussed.

Josh


Sent from my iPhone
[Quoted text hidden]

---

**Edward Young** <youngedwardj@yahoo.com>                  Wed, Sep 25, 2019 at 9:17 PM
Reply-To: "youngedwardj@yahoo.com" <youngedwardj@yahoo.com>
To: "blucrew2017@gmail.com" <blucrew2017@gmail.com>, "Caseytherese@live.com"
<Caseytherese@live.com>, "Lisette L. Young" <lisette.lanuza@gmail.com>

Josh,
 We are unable to meet on site those days and times would Sunday afternoon work for us all to meet at the house to go over these items?

Sent from Yahoo Mail on Android

On Wed, Sep 25, 2019 at 12:57 PM, Josh Blumenthal
<blucrew2017@gmail.com> wrote:
[Quoted text hidden]

---

**Edward Young** <youngedwardj@yahoo.com>                  Thu, Sep 26, 2019 at 7:46 AM
Reply-To: "youngedwardj@yahoo.com" <youngedwardj@yahoo.com>
To: "blucrew2017@gmail.com" <blucrew2017@gmail.com>, "Caseytherese@live.com"
<Caseytherese@live.com>, "Lisette L. Young" <lisette.lanuza@gmail.com>

Josh,
 Actually Saturday morning would be best hopefully that works for you also

Sent from Yahoo Mail on Android

On Wed, Sep 25, 2019 at 9:17 PM, Edward Young
<youngedwardj@yahoo.com> wrote:
[Quoted text hidden]

---

**Josh Blumenthal** <blucrew2017@gmail.com>                Thu, Sep 26, 2019 at 12:57 PM
To: "youngedwardj@yahoo.com" <youngedwardj@yahoo.com>

Eddie

Case 6:21-ap-01010-SY    Doc 45    Filed 02/07/23    Entered 02/07/23 09:04:24    Desc
Main Document        Page 59 of 81

Please provide a time for Sunday afternoon. Also send a summary of work scheduled for the upcoming week. Therese is sending information about work schedules that should be coming from you.

Sent from my iPhone

[Quoted text hidden]

---

**Edward Young** <youngedwardj@yahoo.com>                                   Thu, Sep 26, 2019 at 1:07 PM
Reply-To: "youngedwardj@yahoo.com" <youngedwardj@yahoo.com>
To: "blucrew2017@gmail.com" <blucrew2017@gmail.com>
Cc: "Caseytherese@live.com" <Caseytherese@live.com>, "Lisette L. Young" <lisette.lanuza@gmail.com>

Josh,
Per my last email I had wrote that Sunday was not a good date for us and asked if Sat morning would work.
As far as work schedules
I have an electrician heading there now to get started on connecting ceilings fans and some lighting and he will complete his install on Tuesday.
Tomorrow Friday I have guys going there to  address flooring transition pieces and trim.
Sat/Sunday plumber going to hook up toilets, install shower and tub pieces, master bath tub
Sinks, and vanities. He will not be able to install the sink in boys bathroom or kitchen sink because the kitchen and boys bathroom require the counter tops installed first and at the moment there seems to be a hold up with the kitchen cabinets in which the countertop will sit on obviously and the boys bathroom also needs a counter top which was also through Haros. Other than that plumbing will be complete other than the 2 exceptions listed.

Sent from Yahoo Mail on Android

On Thu, Sep 26, 2019 at 12:58 PM, Josh Blumenthal
<blucrew2017@gmail.com> wrote:
[Quoted text hidden]

---

**Josh Blumenthal** <blucrew2017@gmail.com>                                  Thu, Sep 26, 2019 at 3:44 PM
To: "youngedwardj@yahoo.com" <youngedwardj@yahoo.com>

Sunday works for us, Saturday does not. Concede to me and you meeting since 2 schedules working out is easier.

Sent from my iPhone

[Quoted text hidden]

---

**Josh Blumenthal** <blucrew2017@gmail.com>                                  Thu, Sep 26, 2019 at 11:30 PM
To: blugrace78@gmail.com

Sent from my iPhone

Begin forwarded message:

> **From:** Josh Blumenthal <blucrew2017@gmail.com>
> **Date:** September 26, 2019 at 3:44:57 PM PDT
> **To:** "youngedwardj@yahoo.com" <youngedwardj@yahoo.com>

**Subject: Re:**

Sunday works for us, Saturday does not. Concede to me and you meeting since 2 schedules
working out is easier.
[Quoted text hidden]

---

**Josh Blumenthal** <blucrew2017@gmail.com>                    Mon, Nov 18, 2019 at 8:14 AM
To: blucrew2017@gmail.com

Sent from my iPhone

Begin forwarded message:

[Quoted text hidden]

Monica Blumenthal, Homeowner
14201 Ross Court
Rancho Cucamonga CA 91739
(951)529-0933

11/06/2019

RE: Ross Court Renovation

Young and Associates Construction
Attn Edward Young
7344 Goldboro
Riverside, California

Mr. Young

The misrepresentation of you and/or your company as being a licensed contractor influenced our
decision to enter into an agreement that wouldn't have otherwise existed. Falsely presenting
yourself and/or your company with assistance from your wife Lisette Young, without doubt
placed us in a vulnerable position to which the both of you knowingly exploited with such
finesse that as an unlicensed contractor defrauded my family out of more than $350,000.

Your reckless and careless approach to the project, absence throughout allowed for work to be
done with such incompetence we were often being persuaded to accept the standard of work.
Your promise to fix the number of jobs that were done in error by your employees and/or agents
never materialized. As a result, we were left a number of unfinished job orders, job orders done
in error requiring fix and job orders that were never started. All of which have been paid in full
and require additional money on our part to complete.

Having said that, this notice is a demand for documentation so that we may further evaluate the
total scope of our loss associated with the renovations to our home. Such losses are a direct result
of partnering with an unlicensed and inexperienced contractor who is guided by a fixation for
personal financial gain and a widespread support system of unknowledgeable and incompetent
laborers.

As you should recall, on September 29, 2019 we met and discussed a number of
open (unfinished, incomplete or delayed) job orders. In addition disputes and discrepancies
pertaining to the work performed on our home located at 14201 Ross Court in Rancho
Cucamonga CA was brought to your attention. For reference enclosed is a copy of the agenda
labeled Meeting_Agenda9_29_19.

As part of the September 29, 2019 meeting you were asked to provide specific documentation
and all records to substantiate the scope of the work you and/or your employees/agents allegedly
performed. You responded with the statement you 'did not have them on hand' and said you
would call your bank and do any other thing necessary to gather or gain possession of these
items so that you may provide them to us.

This request is nearing 40 days and continues to remain outstanding. Therefore as follow up to the original request on September 29, 2019 and pursuant to the previously sent notice on Oct 29, 2019 this letter is to serve as a written demand for any and all records with respect to the work done to our home, referred to herein as 'Ross Court Renovation" and the return of any property belonging to myself and/or my husband Josh Blumenthal also known and referred to herein as 'The Homeowners'.

The demand is made pursuant to the agreement entered into on or about June 27, 2019 whereby duties detailed as part of the scope of the project define your role as the 'General Contractor.' We entered into said agreement with specific responsibilities as the 'clients.' We have always acted in good faith fulfilling every obligation as the clients including meeting your demands to pay invoices in full for work not yet started and/or not yet complete. On the contrary though, you have failed to meet the terms of the same agreement and have also failed to meet the legal requirements necessary to enter into such agreements:


As a courtesy, this demand allows 3 days for documents to be compiled and submitted in person by end of day November 11, 2019 as it relates to the Ross Court Renovation.

DOCUMENTS
Demand is hereby issued to surrender documents detailing payments made to any employee, independent contractor, subcontractor licensed or unlicensed, day laborer, supplier, vendor, owner operator and/or any other party not mentioned but operating in similar capacity. Further, any entity in receipt of payment for any portion regardless of value on the Ross Court Renovation. This includes but not limited to designer(s), project manager, consultants etc.

The demand is for copies of, but not limited to; payment schedules, invoices, contracts, estimates, permits, inspection reports, work orders, receipts for materials etc. Including, but not limited to; purchases made at retail chains and stores, home improvement stores and online retailers. Where applicable, all delivery documents including; bills of lading, delivery receipts and freight invoices are to be surrendered.

This demand includes but is not limited to; identifying all parties including individuals, businesses, contractors and/or subcontractors,  licensed or unlicensed who worked in any capacity on the Ross Court Renovation. Identification of said parties must include; physical and mailing addresses, email address, contact number and license number(s).

This demand includes but it not limited to all renderings, inspiration pages/pictures, mood boards, color palettes, screenshots (saved or pinned) and/or intellectual property that relate to the design and or construction of the work done by Lisette Young and/or her agents, Eddie Young and/or his agents.

Further, this demand includes all emails, written correspondence between Edward Young, Lissette Young regarding the Ross Court Renovation mentioned above. An additional included

party to this demand is Therese Casey, to which emails and written correspondence is included in this demand.

This demand shall include copies of correspondences written and stated from all individuals, companies, partnerships, LLC's, corporations, s-corps, builders, suppliers, tradesman, contractors, sub-contractor, handyman, landscaper  or any other person(s) or business(s) representing themselves or any of the above in any form that have provided  any one or more of the following but not limited to: materials, intellectual property, services, goods, labor, consulting Or have provided or entered into an agreements for;  goods, materials, services, consultations, and/ or estimates related to the work or future/planned work on the above mentioned property from January 2016 to current.

Further this demand includes all contracts or agreements entered into with or for one another for any work, materials, goods or services for the Ross Court Renovation.  As well as contracts entered into on behalf of The Homeowners, Therese Casey or the property itself.


Demand is hereby issued for the return of personal property and/or belongings:
This includes but not be limited to all monies received by you from The Homeowners as individuals or acting jointly and/or received by Therese Casey. Money whether received in the form of check, cash, money orders, electronic wire transfers, point of sale purchase or any form of transfer of money not listed. Such transfer of funds not limited to reimbursement, payment of labor, purchases of goods and/or materials, for the Ross Court Renovation but inclusive of all monies paid to date. .

A demand for the  return of any and all personal belongings removed without permission from the property and/or improperly disposed of without permission such as furniture, closet organizers and/or appliances. Removal of furniture without the explicit permission of The Homeowners is a crime and a punishable offense.

Credit
Credits remain outstanding for the following but not limited to: sales tax credit in full, removal of items without approval including furniture,  closet organizers and money accepted as part of a 'contractor percentage'. Money received by The Homeowners as part of the aforementioned is separate from the overall scope of the demand and whereby accepting reimbursement in the form of cashier's check or money order in no way states or implies other matters of business detailed within this demand are null and/or void or satisfied to any degree. The Homeowners encourage you to seriously consider the scope of this request inludes the unlawful taking of furniture or property which is a crime. With respect to sales tax, by no means will we The Homeowners be subject to any IRS audits whereby the sales tax may have gone unpaid. Should we continue to be out this money our only option is to notify the FTB as to your company's questionable accounting practices and file a police report for stolen money. .

Following are totals to be credited immediately upon receipt:

Sales Tax $10,460.56

Contractor Percentage: $10,121.40
Unauthorized removal of furniture, failure to salvage stove/range top combo: $7,500
Closet organizers: $3,772.96

At this point it's reasonable to conclude you have worked either independently, together, or in conjunction with each other or one or more  people to intentionally defraud myself and/ or Joshua Blumenthal through misrepresenting and not limited to general knowledge of the work, capabilities, licensing status, and/or knowingly or unknowingly allowing a separate entity to misrepresent your capabilities, licensing status.

This is a recent job therefore having a duty  to retain such records there is no foreseen or unforeseen reason as to why these demands can not be met in whole or part under the conditions outlined within. Failure to comply will be taken as a refusal and The Homeowners reserve the right to take legal action seeking remedy for the total funds to date plus damages where available and appropriate.


 Regards ,
 Monica Blumenthal


CC: Printed Copy via USPS, Lisette Young via Email, Josh Blumenthal via Email.

M Gmail

Josh Blumenthal <blucrew2017@gmail.com>

## Fwd: Cleaning
1 message

Josh Blumenthal <blucrew2017@gmail.com>                    Wed, Nov 6, 2019 at 1:25 AM
To: Monica Blumenthal <blugrace78@gmail.com>

--------- Forwarded message ---------
From: Josh Blumenthal <blucrew2017@gmail.com>
Date: Tue, 29 Oct 2019 19:59:38 -0700
Subject: Fwd: Cleaning
To: Edward Young <youngedwardj@yahoo.com>, monica blumenthal
<blugrace78@gmail.com>

Eddie

We have a difference of opinion, the house is not ready to move in.
There is entirely way too many fixes that need to be done.

The fixes that remain are a mix of carelessness and  were easily
preventable. The balance is incompetence,  we didn't sign up for
either

As the contractor on the project delivering the home in the condition
it's in is an example of what our concerns were, that there is no
concern Or interest from you for the finished product.

Ignore the fact I was being asked to provide a punch list Thurs and
Fri last week, everything we discussed 45 days ago still remained on
top of everything that had yet to be finished plus all the new fixes
since our last meeting. The last 4 fixes or new work your crew did was
not seen by you, or if seen you would have recognized missing
shutters, drywall that's beyond shit and finish  masonry work that's
laughable


There's concrete yet to be removed and repoured. Concrete that doesn't
drain, and driveway concrete that is crumbling. Brick in the front
porch that was finished with cement and not brick. Bricks that still
remain unfinished. A window missing both shutters? Shutters made from
T&G board showing the grooves and every screw used to attach it. Walls
with curved seams, tile with jagged cuts throughout not to mention a
master shower that's not to spec. Door hinges that don't have matching
hardware, square hinge cutout when the hinge is rounded, gouging out
the trim so the door can open and leaving it looking like shit. An
unfinished hvac closet Not to mention I told you it wasn't to code but
nothing has been done about it. Trim that was never replaced with the
new look let alone baseboards and trim still in satin finish, closet
organizer still installed. A lighting plan that was poorly thought out
and even worse at execution. Relocating lights that remain, lights
hard wired with no control switch, lights that remain active that
should have been capped. Wallpaper still be hung, vent covers missing,
switches that don't work   I also have an entire outside area that is
filled with debris, ungraded back dirt pad, a length of wall in need
of stucco. gates and rail that remain unfixed and information and
pricing from The gate company to you 2 weeks old still waiting for you
to share.

I have kitchen cabinets that do not meet our request and a designer
who walked off the job.

You name it or rather it was listed as a job order and there's
something to be fixed, and it's not from being unreasonable, it from a
lack of competency and accountability. When you're not on site signing
off on the work your guys do then this is what results. A homeowner in
for $350,000 who would have never agreed to day laborers on the job.
We were taken for a ride, and a costly one. Not to mention I have a
sales tax credit I'm still waiting to receive, credit for the doors
that were over ordered, the window ordered in error, credit for the
light fixtures that replaced designer grade with builder grade and
number of other things that remain.

We will not be moving back in under these conditions. I told you that
45 days ago but your promise to fix meant nothing to you because
everything and then some remains.

At this point I have no other option than to move back into a hotel
while I source contractors to fix the mess that remains. In the
meantime I will be filing a claim and taking legal action seeking full
compensation plus damages.

This email is not a punch list notice, it's informational as to the
claims that will be made. Attempts to fix were made Over the last 60
days however  it was your request to post pone until the final walk
through. I was clear We were not waiting until the walk through but it
wasn't taken seriously. no one from your crew is to be at the house,
including 3rd parties contractors. I will send a follow up with a list
of demands as far as paperwork is concerned and contact info as all
parties who worked on the job will be listed in the complaint.


Josh



Sent from my iPhone

Begin forwarded message:

> From: Edward Young <youngedwardj@yahoo.com>
> Date: October 29, 2019 at 6:14:58 PM PDT
> To: "Blucrew2017@gmail.com" <Blucrew2017@gmail.com>
> Subject: Cleaning
> Reply-To: "youngedwardj@yahoo.com" <youngedwardj@yahoo.com>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
> Josh & Monica,

> Today the cleaners came and complete cleaning and your home is ready to go see above the pics attached your home is spotless ready to move in your furniture.
>
>                          Thank you,
>                          Eddie Young
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
>
> Sent from Yahoo Mail on Android

---

**16 attachments**



**Resized_20191029_114637.jpg**
212K



**Resized_20191029_145840.jpg**
21K



**Resized_20191029_110419.jpg**
32K

**Resized_20191029_145834.jpg**
246K





**Resized_20191029_110757.jpg**
181K



**Resized_20191029_143725.jpg**
167K



**Resized_20191029_114409.jpg**
55K



**Resized_20191029_145655.jpg**
224K

 **Resized_20191029_151854.jpg**
136K

**Resized_20191029_144026.jpg**
228K





**Resized_20191029_150603.jpg**
191K



**Resized_20191029_145705.jpg**
161K



**Resized_20191029_140806.jpg**
224K

 **Resized_20191029_140725.jpg**
209K

**Resized_20191029_140713.jpg**
177K

**Resized_20191029_140721.jpg**
119K

 Gmail

**Josh Blumenthal <blucrew2017@gmail.com>**

---

## Demand for Documentation
1 message

---

**Monica Blumenthal <blugrace78@gmail.com>**                    Fri, Nov 8, 2019 at 6:08 PM
To: youngedwardj@yahoo.com
Cc: lisette.lanuza@gmail.com, Josh Blumenthal <blucrew2017@gmail.com>

Edward

Please see attached demand for documentation.

Monica Blumenthal

---

**2 attachments**

📄 **DemandEdwardYoung.docx**
   23K

📄 **Meeting_Agenda_9_29_19.docx**
   18K

## ELECTRICAL

**BEFORE**                    **AFTER**













LISETTE
YOUNG
interior designer

## ROSS COURT BILLABLE HOURS- DESIGN WORK

| DATE: | HOURS | TOTAL |
|---|---|---|
| 6/28/2019 | 4 | |
| 6/29/2019 | 1 | |
| 6/30/2019 | 2 | |
| 7/1/2019 | 1 | |
| 7/2/2019 | 2 | |
| 7/3/2019 | 6 | |
| 7/4/2019 | 5 | |
| 7/5/2019 | 4 | |
| | TOTAL: | 25 |
| 7/6/2019 | 2 | |
| 7/8/2019 | 2 | |
| 7/9/2019 | 2 | |
| 7/10/2019 | 1 | |
| 7/12/2019 | 1 | |
| 7/13/2019 | 2 | |
| 7/14/2019 | 4 | |
| 7/16/2019 | 3 | |
| 7/20/2019 | 3 | |
| 7/21/2019 | 3 | |
| 7/23/2019 | 1 | |
| 7/24/2019 | 1 | |
| 7/26/2019 | 2 | |
| | TOTAL: | 27 |
| 8/2/2019 | 5 | |
| 8/3/2019 | 3 | |
| 8/24/2019 | 2 | |
| | TOTAL: | 10 |




**LISETTE YOUNG**
interior designer

Lisette Young interior designer
949-307-3714
lisette.lanuza@gmail.com

Invoice #000039

# Billable Hours- Interior Design Services

We appreciate your business.

**Bill To**
Therese Casey
caseytherese@live.com
Upland, CA

**Invoice Details**
PDF created August 26, 2019
$2,565.00

**Payment**
Due July 27, 2019
$2,565.00

| Item | Quantity | Price | Amount |
|---|---|---|---|
| Interior Design Services | 27 | $95.00 | $2,565.00 |
| Design only service | | | |
| Billable Hours:  27.00 | | | |
| Billing period from:  7/6 to 7/24 | | | |

| | |
|---|---|
| Subtotal | $2,565.00 |

## Total Paid $2,565.00

**Payments**
Jul 30, 2019 (MASTERCARD 2078)                                    $2,565.00

Page 1 of 1



**View online**

**To view your invoice go to https://gosq.me/u/JjagaPwl**
Or open your camera on your mobile device, and place the code on the left
within the camera's view.



Lisette Young interior designer

949-307-3714

lisette.lanuza@gmail.com

**Invoice #000038**

# Billable Hours- Interior Design Services

We appreciate your business.

**Bill To**

Therese Casey

caseytherese@live.com

Upland, CA

**Invoice Details**

PDF created August 26, 2019

$2,375.00

**Payment**

Due July 12, 2019

$2,375.00

| Item | Quantity | Price | Amount |
|------|----------|-------|--------|
| Interior Design Services | 25 | $95.00 | $2,375.00 |
| Design only service | | | |
| *Billable Hours:  25.00* | | | |
| *Billing period from:  6/28 to 7/5* | | | |

| | |
|---|---|
| Subtotal | $2,375.00 |

## Total Paid

**$2,375.00**

**Payments**

Aug 26, 2019 (Square Point of Sale)                                               $2,375.00



**View online**

**To view your invoice go to https://gosq.me/u/p4QmfPH4**

Or open your camera on your mobile device, and place the code on the left within the camera's view.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

1407 N. Batavia Street, Suite 202, Orange, CA, 92867

A true and correct copy of the foregoing document entitled (*specify*): _____
PLAINTIFFS' EXHIBITS FOR CASE IN  CHIEF
_____
_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 02/07/2023_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Glen J Biondi glen@biondilawcorp.com, biondigr80135@notify.bestcase.com;

Arturo Cisneros (TR) amctrustee@mclaw.org, acisneros@iq7technology.com;ecf.alert+Cisneros@titlexi.com;

United States Trustee (RS) ustpregion16.rs.ecf@usdoj.gov;   Benjamin Heston bheston.ecf@gmail.com,
HestonBR41032@notify.bestcase.com, NexusBankruptcy@jubileebk.net

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 02/07/2023_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Hon. Scott H. Yun
U.S. Bankruptcy Court
3420 Twelfth Street, Suite 345
Riverside, CA 92501 (Personal Delivery)

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 02/07/2023 | Paul J. Gutierrez | /s/ Paul J. Gutierrez |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                **F 9013-3.1.PROOF.SERVICE**