**NEXUS BANKRUPTCY**
BENJAMIN HESTON (297798)
100 Bayview Circle #100
Newport Beach, CA 92660
T: 951-290-2827
F: 949-288-2054
*ben@nexusbk.com*

Attorney for Defendants,
Edward and Lisette Young

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>EDWARD YOUNG, and LISETTE YOUNG,<br><br>    Debtors. | Case No.: 6:20-bk-16824-SY<br><br>Chapter 7<br><br>Adv No.: 6:21-ap-01010-SY<br><br>**DEFENDANTS' TRIAL BRIEF** |
| JOSHUA A. BLUMENTHAL, and MONICA BLUMENTHAL,<br><br>    Plaintiffs,<br><br>v.<br><br>EDWARD YOUNG, an individual; and LISETTE YOUNG, fka Lisette Lanuza, an individual,<br><br>    Defendants. | **Trial**<br>Date: March 15, 2023<br>Time: 9:30 a.m.<br>Courtroom 302<br>3420 Twelfth Street<br>Riverside, CA 92501 |

## STATEMENT OF FACTS

Prior to meeting with the Blumenthals, Lisette Young ("LY") did some interior design work for Therese Casey (Monica Blumenthal's mother) which was featured in Houzz magazine. When Joshua and Monica Blumenthal ("JB" and "MB") were looking into having their house remodeled, Casey referred them to LY. The Blumenthals spoke with LY who then suggested that her husband, Edward Young ("EY"), handle the construction aspects of the project. The Youngs and Blumenthals then met and started working out the specifics of the remodeling project. The

1

Youngs assembled quotes, renderings, estimates, and contracts and presented them to the Blumenthals. The Blumenthals agreed to all aspects of the project, and the Youngs got started immediately.

At the time when the project was formulated, the Youngs were not licensed through the California Council For Interior Design Certification or California Contractors State License Board. A simple first/last name search at https://cslb.ca.gov/ or https://ccidc.org/ would have revealed this fact. At no point did the Youngs state or imply that they had these licenses. The Blumenthals did not seem at all concerned or interested in their "on paper" qualifications. They had seen the work that they did for Therese Casey, as well as the preliminary work on the remodeling, and seemed satisfied that the Youngs knew what they were doing.

JB paid for the project from his spendthrift trust fund, The Joshua Blumenthal Family Trust. The trust is funded by Joshua's parents who own and operate Office Star Products, a major nationwide furniture distributor. The funds for the project came from checks written by the Trust to the Youngs.

While the Youngs were working on the house, the Blumenthals rented an RV and took an extended camping trip. At various times throughout the project, the Youngs would send progress pictures to the Blumenthals or the Blumenthals would stop by the house to check in. The Blumethals were consistently pleased with how the project was coming along.

At one point, JB contacted EY to inquire about a roof repair project, for which EY quoted them $30,000. JB presented EY with a check from the Trust. Very shortly after EY deposited the check, JB cancelled the job and requested a refund. JB asked that the refund check be made out to JB personally - not to the Trust. JB joked with EY about how he would get access funds from the Trust on the pretense that it was for necessities, and then turn around to get a refund back to

2

himself so that he could spend the money on whatever he pleased. As an aside, JB is currently in litigation against the Trust fund in the San Bernardino Superior Court.

After the Youngs completed the project, the Blumenthals decided it would be a good time to become dissatisfied with the work. JB confronted the Youngs at the house and belligerantly started making demands and complaints about the work. Based on the Youngs' observations over the preceding months, there was drug and alcohol abuse that was occurring at the property, and they believe that this likely played a role in the Blumenthals' change of heart and their behavior toward the end of the business relationship.

Shortly after the confrontation, the Blumenthals instituted the San Bernardino Superior Court action which preceded this bankruptcy. The lawsuit requests:

- $6,447,000 of economic and non-economic damages;
- Full disgorgement;
- Punitive damages;
- Exemplary damages;
- Temporary injunction;
- Permanent injunction;
- Rescission of contract;
- Declaration of unenforceability of contract;
- Accounting;
- Constructive trust;
- Imposition of a lien on all real and personal property;
- Costs of suit; and
- Prejudgment interest.

3

The house, which was originally purchased in 2013 for $630,000, is currently pending a sale for $1,247,000. Based on the pictures from the MLS listing, none the work performed by Defendants has been altered in any way.

Although the Trust has the capacity to sue and could have brought this action, the Blumenthals filed in their individual capacities. Presumably, their goal is to get a non-dischargeable judgment against the Youngs and to, again, spend that money on whatever they desire.

## ARGUMENT

The facts here are strikingly similar to those in the Ninth Circuit Bankruptcy Appelate Panel case In re Biswas[1].

In Biswas, the debtor/defendant performed work for the plaintiffs while he was unlicensed. The plaintiff, Narang, "did not inquire further into Biswas's experience in residential construction, nor did he question Biswas about the status of his contractor's license." Id at 1. Due to Biswas' inexperience, there were excessive delays, the work was sub-par and not up to code. The Narags ultimately had to hire an inspection company, and then pay nearly $300,000 for another company to perform remedial and corrective work.

The BAP held that despite the fact that Biswas misrepresented his licensure status, experience, and other qualifications, the debt was dischargeable. The court found that his exagerations were perhaps founded in a high opinion of himself. The court further held that Biswas did not have the intent to deceive, but he merely "bit off more than he could chew". In summary, the BAP affirmed the trial court's determination that the debt was dischargeable.

In the instant case, it is clear that the Blumenthals have not suffered any damages. As noted above, they are currently selling the property without having made any alterations to the work

---

[1] In re Biswas, BAP EC-09-1064-DJuMk (B.A.P. 9th Cir. Sep. 2, 2009)

4

performed by the Youngs. Even if there were damages caused by the Youngs, it would not be due to fraud or willful and malicious injury.

Date: March 8, 2023

Respectfully submitted,

BENJAMIN HESTON,
Attorney for Defendants